887 So.2d 1260 (2004)
Paul THOMPSON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC02-800.
Supreme Court of Florida.
November 10, 2004.
*1261 Howard Babb, Public Defender, James R. Baxley and Jason D. Winn, Assistant Public Defender's, Fifth Judicial Circuit, Tavares, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Pamela J. Koller and Kellie A. Nielan, Assistant Attorney General's, Dayton Beach, FL, for Respondent.
QUINCE, J.
We have for review Thompson v. State, 808 So.2d 284 (Fla. 5th DCA 2002), based on apparent conflict with the decision in Huss v. State, 771 So.2d 591 (Fla. 1st DCA 2000). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The question presented here is the application of the punishment enhancement provisions of section 322.34(2), Florida Statutes (Supp.1998), where the defendant's prior driving while license suspended (DWLS) convictions occurred under an earlier version of the statute that did not require proof of knowledge as an element of the offense. For the reasons expressed below, we approve the decision in Huss and quash the decision in Thompson.

Facts and Procedural History
Paul Thompson pled guilty to a felony charge of knowingly driving with a license that had been suspended or revoked (felony DWLS) under section 322.34(2)(c), Florida Statutes (Supp.1998). In a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, Thompson argued that because his two predicate DWLS convictions used to charge him with felony DWLS had occurred prior to October 1, 1997,[1] he could only be charged with a misdemeanor. Thompson cited the First District Court of Appeal's decision in Huss v. State, 771 So.2d 591 (Fla. 1st DCA 2000), as authority for his argument. Thompson also argued that the trial court did not have jurisdiction to hear his case because, under Huss, his two predicate convictions were improperly used to enhance his charge to felony DWLS. Without these predicate convictions, Thompson asserted, his crime would only be a misdemeanor under the amended statute. The trial court denied Thompson's 3.850 motion, concluding that Huss constituted a change in decisional law that should not be retroactively applied.
On appeal, the Fifth District Court of Appeal also rejected Thompson's argument regarding the retroactive application of Huss. Thompson, 808 So.2d at 285. The Fifth District agreed with the trial court that Huss represents a change in the law, not merely a recognition of the "state of the law," as Thompson asserted. Id. The Fifth District also concluded that the Huss ruling was not retroactive. Id. Finally, the Fifth District rejected Thompson's assertion that the trial court was without jurisdiction to enter its judgment and characterized *1262 the argument as "`clearly lack [ing] merit.'" Id. (quoting Martin v. State, 809 So.2d 65, 66 (Fla. 5th DCA 2002)).

Analysis
Prior to October 1, 1997, section 322.34, Florida Statutes (1995), provided in relevant part:
(1) Any person whose driver's license or driving privilege has been canceled, suspended, or revoked as provided by law, except persons defined in s. 322.264, and who drives any motor vehicle upon the highways of this state while such license or privilege is canceled, suspended, or revoked, upon:
....
(c) A third or subsequent conviction is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The Legislature amended the statute by adding language that the driving must be done "knowing of such cancellation, suspension, or revocation,"[2] thus adding a knowledge element to the crime. See § 322.34(2), Fla. Stat. (Supp.1998). The amended statute also provides that a person who drives while his or her license is canceled, suspended, or revoked but does not have knowledge of the cancellation, suspension, or revocation as provided in subsection (2) is merely guilty of a moving violation. See § 322.34(1), Fla. Stat. (Supp.1998).[3]
The factual circumstances of Huss are almost identical to the instant case. See Huss, 771 So.2d at 591.[4] William Raymond Huss was convicted of felony DWLS under the amended statute. As in Thompson, the predicate convictions which the State relied on to enhance Huss's offense to felony status occurred prior to the October 1, 1997, effective date of the amended statute. 771 So.2d at 592. The First District held that because Huss's prior convictions had occurred before the statutory amendment that added the knowledge element, the convictions could not be used under the amended statute for the purposes of enhancement to felony DWLS. The First District explained that "the law under which [the defendant] received his prior convictions is no longer in effect, and for purposes of enhancement under the new statute for multiple convictions, the statute by its plain wording applies only to a `conviction' for the offense prescribed by the present statute." Id. at 593.
In a recent decision, the First District also certified conflict with the decision in Thompson on this very issue. See Stutts *1263 v. State, 821 So.2d 449 (Fla. 1st DCA 2002). In Stutts, the First District decided that the defendant's prior DWLS convictions in Alabama could not be the basis for an enhanced felony DWLS offense under the amended section 322.34(2) because the Alabama statute contained no knowledge element. Id. at 450. The First District explained that its prior decision in Huss did not change the law, but merely "stated the `plain meaning' of the new provision" that was created by the legislative amendment. Id. at 451.
The underlying conflict between these cases is whether Huss represents a change in the decisional law of this state that should be accorded retroactive application. In Thompson, the Fifth District concluded that "Huss represents a change in the law, but the ruling is not retroactive." 808 So.2d at 284. In contrast, the First District characterized its decision in Huss as being based on the plain language of the applicable statute which "did not constitute a change in the decisional law of this state." Stutts, 821 So.2d at 451. As the First District explained in Huss, "the law under which [Huss] received his prior convictions is no longer in effect, and for purposes of enhancement under the new statute for multiple convictions, the statute by its plain wording applies only to a `conviction' for the offense prescribed by the present statute." 771 So.2d at 593. The First District also pointed out that the Legislature could have, but did not, provide for enhancement under the amended statute based on violations of the pre-amendment version of the statute. Id.
An examination of this Court's decision in Witt v. State, 387 So.2d 922 (Fla.1980), and the United States Supreme Court's recent decision in Fiore v. White, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001), is instructive in answering the question concerning the impact of the Huss decision. In Witt, this Court was asked to apply a number of alleged changes in decisional law to a defendant's conviction for first-degree murder and his resulting death sentence during his appeal of the denial of postconviction relief under Florida Rule of Criminal Procedure 3.850. This Court had to balance two important goals of the criminal justice system  "ensuring finality of decisions" and "ensuring fairness and uniformity in individual cases"  to determine when a subsequent change in a rule of law should be applied retroactively in the context of postconviction relief. 387 So.2d at 925. We concluded that an alleged change of law will not be considered in a rule 3.850 proceeding unless the change: (a) emanates from this Court or the United States Supreme Court; (b) is constitutional in nature; and (c) constitutes a development of fundamental significance. Id. at 931.
This Court has applied the Witt analysis to a number of cases, with differing outcomes. Compare State v. Stevens, 714 So.2d 347 (Fla.1998) (determining that Court's decision in State v. Iacovone, 660 So.2d 1371 (Fla.1995), which invalidated the statutory penalties for attempted second- and third-degree murder of a law enforcement officer, met all three prongs of Witt and should be applied retroactively) with Delgado v. State, 776 So.2d 233, 241, 241 n. 7 (Fla.2000) (concluding that Court's interpretation of the burglary statute did not meet the second or third prongs of the Witt test and could not be applied retroactively).
Huss does not meet the first prong of the Witt test as it was not a decision of either this Court or the United States Supreme Court. Thus, the Fifth District correctly concluded that the Huss ruling was not retroactive under the Witt analysis. Thompson, 808 So.2d at 285. Moreover, the question of retroactivity under *1264 Witt is not applicable to this case because we are examining a change in the statutory law of this state not a change in decisional law emanating from this Court or the United States Supreme Court.
However, the question of retroactivity should not have ended the Fifth District's analysis of Thompson's postconviction claim. As the United States Supreme Court explained in Bunkley v. Florida, 538 U.S. 835, 123 S.Ct. 2020, 155 L.Ed.2d 1046 (2003), "[t]he question here is not just one of retroactivity." Id. at 840, 123 S.Ct. 2020 (remanding for this Court to resolve separate due process question of whether defendant's possession of pocketknife satisfied the elements of Florida's first-degree burglary statute). Thompson's claim must also be evaluated in light of the due process principles set forth in Fiore.
Fiore involved a Pennsylvania criminal statute that prohibited the operation of a hazardous waste facility without a permit. 531 U.S. at 226, 121 S.Ct. 712. The Pennsylvania Supreme Court interpreted the statute for the first time after William Fiore's conviction became final. This subsequent interpretation made it clear that Fiore's conduct was not within the statute's scope. Id. After Fiore was unsuccessful in obtaining collateral relief in the state courts, he brought a federal habeas corpus action. The federal district court granted the habeas writ, but the Third Circuit Court of Appeals reversed on the basis that state courts are under no constitutional obligation to apply their decisions retroactively. Id. at 227, 121 S.Ct. 712. The United States Supreme Court granted Fiore's petition for certiorari to determine whether his conviction was consistent with due process. Id. at 228, 121 S.Ct. 712. In response to a certified question from the United States Supreme Court, the Pennsylvania Supreme Court specified that its interpretation of the statute "did not announce a new rule of law," but "merely clarified the plain language of the statute" and furnished a "proper statement of law" in Pennsylvania at the time of Fiore's conviction. Id. at 228, 121 S.Ct. 712. Because the statutory interpretation "was not new law," the United States Supreme Court concluded that the case "presents no issue of retroactivity." Id. However, the Supreme Court further concluded that Fiore's conviction and continued incarceration violated due process because the Commonwealth of Pennsylvania presented no evidence of the basic element of failure to possess a permit. Id. at 229, 121 S.Ct. 712.
In determining how the Fiore due process principles apply, we must consider the nature of the "change in the law" at issue here. The Legislature amended section 322.34 in 1997 to include a knowledge element. Prior to the 1997 amendment, an individual who drove a vehicle while his or her driver's license was canceled, suspended, or revoked, without regard to the individual's knowledge of the cancellation, suspension, or revocation, was guilty of a second-degree misdemeanor upon a first conviction, a first-degree misdemeanor upon a second conviction, and a third-degree felony upon a third or subsequent conviction. See § 322.34(1), Fla. Stat. (1995). Thus, a conviction under the pre-1997 statute required no proof of knowledge as this was not an element of the offense. After the 1997 amendment took effect on October 1, 1997, operation of a vehicle with a canceled, suspended, or revoked license where there is no knowledge of the cancellation, suspension, or revocation is a moving violation. See § 322.34(1), Fla. Stat. (Supp.1998). Operation of a vehicle with knowledge that the driver's license has been canceled, suspended, or revoked is subject to progressively *1265 more harsh punishment for repeated violations. See id. § 322.24(2).[5]
Thompson pled guilty to the felony charge of knowingly driving while his license was suspended or revoked in violation of section 322.34(2)(c), Florida Statutes (Supp.1998). Under this subsection, an individual who is convicted for a third or subsequent time of driving with a canceled, suspended, or revoked driving license when the individual has knowledge of the cancellation, suspension, or revocation is guilty of a third-degree felony. In Huss, the First District explained that DWLS convictions under the previous statute, which did not contain a knowledge element, do not qualify as prior convictions under the current amended statute, which contains knowledge as an element of the DWLS offense. Huss, 771 So.2d at 592-93. If that is the case, Thompson pled to an offense for which the State could not demonstrate all of the elements, i.e., two prior convictions of DWLS with knowledge that the license was canceled, suspended, or revoked. At the time Thompson entered his plea, no court had interpreted this new statutory provision.
The post-amendment statute provides that knowledge of the cancellation, suspension, or revocation element can be satisfied if the person has been cited previously under subsection (1); admits to knowledge of the cancellation, suspension, or revocation; or received knowledge of the cancellation, suspension, or revocation via a judgment, order, or uniform traffic citation as provided in subsection (4). § 322.34(2), Fla. Stat. (Supp.1998). The trial court may also consider any evidence not mentioned in subsection (2) which would show that the person knowingly violated the statute. Id. § 322.34(3). However, as the First District opined, while "[t]he current statute sets forth three methods of establishing `knowledge,'... [it] cannot be read as providing a method of supplying the missing knowledge element with respect to earlier convictions." Huss, 771 So.2d at 593 n. 1. Further, "[a]lthough the legislature might have done so, no provision was made in the 1997 law for enhancement based on convictions under the prior statute." Id. at 593.[6]
"A conviction establishes only the elements of the crime, and does not include underlying facts or conduct which are not elements of the offense." Dautel v. State, 658 So.2d 88, 90 (Fla.1995) (emphasis added) (holding that trial court may not consider underlying facts in determining whether out-of-state conviction is analogous to Florida statute for the purpose of calculating points for sentencing guidelines scoresheet). Because Thompson's predicate convictions occurred under the previous statute, which did not include knowledge as an essential element of the offense, the State did not prove knowledge in his previous convictions. Consequently, Thompson's previous convictions do not qualify as predicate convictions of the offense proscribed by the current statute, i.e., driving with knowledge of the cancellation, suspension, or revocation of one's driving license. As the Supreme Court explained in Fiore,"the Due Process Clause of the Fourteenth Amendment forbids *1266 a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." 531 U.S. at 228-29, 121 S.Ct. 712. Here, the State did not and could not prove that Thompson had three previous convictions for the offense proscribed by section 322.34(2), driving with knowledge that his license had been canceled, suspended, or revoked. Thus, Thompson's conviction fails to satisfy federal constitutional due process and his felony conviction must be reversed. However, as in Huss, judgment and conviction may be entered against Thompson pursuant to section 322.34(2)(a), Florida Statutes (Supp.1998).[7]
For the reasons discussed above, we quash the Fifth District's decision in Thompson and approve the First District's decision in Huss. We remand this case to the Fifth District for proceedings consistent with this opinion.
It is so ordered.
PARIENTE, C.J., and LEWIS and CANTERO, JJ., concur.
WELLS, J., concurs in result only with an opinion.
ANSTEAD and BELL, JJ., concur in result only.
WELLS, J., concurring in result only.
I concur in remanding this case to the Fifth District. However, I do not join in the analysis contained in the majority opinion.
Rather, I believe that both Thompson and Huss v. State, 771 So.2d 591 (Fla. 1st DCA 2000), presented issues of statutory construction. The Huss decision was correct because the First District correctly construed section 322.34(2), Florida Statutes. The Thompson decision was wrong because it mistakenly concluded that the issue before it was the retroactivity of the Huss decision rather than the construction of section 322.34(2). The Fifth District's mistake in this regard resulted in its decision in this case being in conflict with Huss because the Fifth District did not apply the First District's correct construction of the statute.
It appears to me that the confusion in this case arises from the different procedural presentations of the issue in Huss and the issue in Thompson. Huss was a direct appeal from a conviction for felony driving while license suspended, in violation of section 322.34(2), Florida Statutes (Supp.1998).[8] Huss had filed a motion to dismiss his case from the circuit court and *1267 transfer it to county court, arguing that the statute did not permit the use of his prior convictions for driving while his license was suspended, which were obtained prior to the addition of the knowledge element to the statute, as a basis to enhance the charge from a misdemeanor to a felony. He asserted that because he could only be charged with a misdemeanor, the circuit court did not have jurisdiction over the cause. The trial judge denied the motion, and Huss entered a plea of nolo contendere, reserving the right to raise on appeal the issue of whether his prior convictions could be used for enhancement under the current statute. On appeal, the First District construed the statute as amended in 1998, holding "the law under which appellant received his prior convictions is no longer in effect, and for purposes of enhancement under the new statute for multiple convictions, the statute by its plain wording applies only to a `conviction' for the offense prescribed by the present statute." Huss, 771 So.2d at 593. The First District then reversed Huss's felony conviction and remanded with directions to enter a judgment and conviction pursuant to section 322.34(2)(a).
As is evident from reading Huss, the First District's opinion had nothing to do with retroactivity in the application of the statute. The First District itself makes this point in Stutts v. State, 821 So.2d 449, 451-52 (Fla. 1st DCA 2002).
The lower court rejected appellant's ineffective assistance claim below in part because Huss was not issued until after appellant was sentenced. When Huss issued is not determinative, however, because the requirement that offenses from other jurisdictions be sufficiently similar to the relevant Florida offense for treatment as prior offenses is a principle of long standing. Huss did not constitute a change in the decisional law of this state to which a [Witt v. State, 387 So.2d 922, 931 (Fla.1980),] analysis would apply. Huss did not change the law; the legislature did when it created a new [driving while license suspended or revoked] offense. We merely stated the "plain meaning" of the new provision. Huss, 771 So.2d at 593. Accordingly, we certify conflict with Thompson v. State, 808 So.2d 284 (Fla. 5th DCA 2002) (holding that "Huss represents a change in the law, but the ruling is not retroactive").
On the other hand, Thompson was a review of a circuit court's denial of a postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. Thompson based his postconviction motion on the allegation that the circuit court that sentenced him under section 322.34(2)(c), Florida Statutes (Supp.1998), did not have jurisdiction to impose the sentence. Thompson's argument regarding the circuit court's jurisdiction rested on the First District's interpretation of section 322.34(2) in Huss. The circuit court denied the motion, "holding that the Huss change should not be retroactively applied." Thompson, 808 So.2d at 285. On Appeal, the Fifth District affirmed the circuit court's denial, holding that "Huss represents a change in the law, but the ruling is not retroactive." Id. The Fifth District further upheld the trial court's jurisdiction to enter its judgment.
The Fifth District's decision was in error because the issue before it was the correct construction of section 322.24, Florida Statutes (Supp.1998). Thompson was correct that under the correct construction of section 322.24, Florida Statutes (Supp.1998), the circuit court did not have jurisdiction to impose the sentence. This had nothing to do with whether the First District's Huss decision was retroactive. The Fifth District could have either followed *1268 the Huss decision or rejected the Huss decision. Of course, the circuit court in Thompson erred in failing to follow the Huss decision in accord with Pardo v. State, 596 So.2d 665, 666-67 (Fla.1992) (in absence of inter-district conflict, district court decisions bind all Florida trial courts).[9] However, our district courts do not make decisions as to whether to follow or conflict with other district court decisions on the basis of retroactivity.
While I agree with the majority's statement that Witt v. State, 387 So.2d 922 (Fla.1980), applies only to issues of decisional retroactivity and when those decisions are by this Court or the United States Supreme Court, I do not believe that a discussion of Witt or the United States Supreme Court's decision in Fiore v. White, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001), is on point or helpful in this case. To the contrary, this case does not implicate concepts of retroactivity, changes in the law, or due process, as discussed in either Witt or Fiore. This case clearly involves a garden-variety issue of statutory construction which happens to be presented in postconviction.
NOTES
[1] The statute was amended by the Legislature to include a knowledge element that was not an element of the previous offense of felony driving with a suspended or revoked license. Compare § 322.34(2)(c), Fla. Stat. (Supp.1998) with § 322.34(1), Fla. Stat. (1995). The amended statute became effective on October 1, 1997. See ch. 97-300, §§ 40, 54, Laws of Fla.
[2] As amended by the Legislature, section 322.34(2) provides in pertinent part:

(2) Any person whose driver's license or driving privilege has been canceled, suspended, or revoked as provided by law, except persons defined in s. 322.264, who, knowing of such cancellation, suspension, or revocation, drives any motor vehicle upon the highways of this state while such license or privilege is canceled, suspended, or revoked, upon:
....
(c) A third or subsequent conviction is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 322.34(2), Fla. Stat. (Supp.1998) (emphasis added).
[3] Section 322.34(1), Florida Statutes (Supp.1998), states as follows:

(1) Except as provided in subsection (2), any person whose driver's license or driving privilege has been canceled, suspended, or revoked ... who drives a vehicle upon the highways of this state ... is guilty of a moving violation....
[4] We recognize that the procedural posture of the two cases is not the same. Huss involved a direct appeal of the conviction, while Thompson involved an appeal of the trial court's denial of postconviction relief. Compare Huss, 771 So.2d at 591-93 with Thompson, 808 So.2d at 285.
[5] Under the amended statute, a person who drives a vehicle while his or her driver's license is canceled, suspended, or revoked and who knows of the cancellation, suspension, or revocation is guilty of a second-degree misdemeanor upon a first conviction of this offense, a first-degree misdemeanor upon a second conviction, and a third-degree felony upon a third or subsequent conviction. See § 322.34(2), Fla. Stat. (Supp.1998).
[6] Nor does the amended statute provide for the use of these pre-amendment convictions at all in enhancing punishment. Huss, 771 So.2d at 593 n. 1.
[7] Under the current statute, "[t]he element of knowledge is satisfied if the person has been previously cited as provided in subsection (1)," that is, driving with a canceled, suspended, or revoked driver's license without proof of knowledge of the cancellation, suspension, or revocation of the driver's license. See § 322.34(2), Fla. Stat. (Supp.1998). Thompson's previous convictions under the pre-amendment statute satisfy this criteria. Thompson's conviction under the amended statute meets the requirements of section 322.34(2)(a), in that his previous convictions without proof of knowledge satisfy the knowledge element required for the current conviction. Thus, Thompson can be adjudged guilty of a misdemeanor of the second degree, as provided in section 322.34(2)(a).
[8] Section 322.34(2), Florida Statutes (Supp.1998), provides:

Any person whose driver's license or driving privilege has been canceled, suspended, or revoked as provided by law, except persons defined in s. 322.264, who, knowing of such cancellation, suspension, or revocation, drives any motor vehicle upon the highways of this state while such license or privilege is canceled, suspended, or revoked, upon:
(a) a first conviction is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
[9] It appears to me that the Fifth District applied the correct analysis to the issue of the application of Huss in a later postconviction case, Oxendine v. State, 852 So.2d 286 (Fla. 5th DCA 2003).