966 So.2d 330 (2007)
Robert Lee SMILEY, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-1237.
Supreme Court of Florida.
June 7, 2007.
Rehearing Denied October 1, 2007.
*332 Carey Haughwout, Public Defender, Fifteenth Judicial Circuit, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, FL, for Respondent.
LEWIS, C.J.
We have for review a decision of a district court of appeal in which the following question was certified by the court to be of great public importance:
DOES SECTION 776.013, FLORIDA STATUTES (2005), APPLY TO CASES PENDING AT THE TIME THE STATUTE BECAME EFFECTIVE?
State v. Smiley, 944 So.2d 1027, 1028 (Fla. 4th DCA 2006). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer the certified question in the negative.

FACTS AND PROCEDURAL HISTORY
The instant action arises from the decision by the Fourth District Court of Appeal in State v. Smiley, 927 So.2d 1000 (Fla. 4th DCA 2006). The facts of the underlying action were detailed in the opinion of that court:
Robert Smiley was charged with first degree premeditated murder occurring on November 6, 2004. What little appears in the record before us is that Smiley shot the victim who was an occupant of Smiley's cab. Smiley appears to be making a claim of self-defense. Just before trial, Smiley filed a motion to permit the use of two special jury instructions based upon the newly enacted section 776.013. Those proposed instructions are:
A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he reasonable [sic] believes it is necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.
A person who unlawfully and by force enters or attempts to enter a person's occupied vehicle is presumed to be doing so with the intent to commit an unlawful act involving force or violence.
Id. at 1001. The trial court granted the request of Smiley to use these jury instructions after finding that "the statute was remedial and should have retroactive application." Id.
The State sought review of the decision of the trial court through an emergency petition for writ of certiorari to the Fourth District. After entering an order to show cause why relief sought by the State should not be granted, the Fourth District received argument from both parties. The Fourth District also granted the motion of the State to stay the trial court proceedings.
The Fourth District granted the State's petition, holding that section 776.013 of the Florida Statutes (2005) does not apply to conduct committed prior to its effective date of October 1, 2005; therefore, Smiley was not entitled to the requested jury *333 instructions. See id. at 1001, 1003. The Fourth District correctly recognized that prior to this legislation, Florida common law required a duty to retreat in most situations with limited exceptions under "the castle doctrine." See id. at 1001-02.[1] The Fourth District determined that "[n]othing in the legislation indicates an intent to apply the abrogation of the common law retroactively." Id. at 1003. The Fourth District further reasoned that section 776.013 made a substantive change to section 776.012, Florida Statutes (2004), and it therefore would be a violation of article X, section 9 of the Florida Constitution for section 776.013 to be given retroactive application. See id. The court further concluded that section 776.013 is not remedial, which would permit retroactive application, because the statute created a new right of "self-defense without the duty to retreat." Id.
Smiley thereafter filed a motion for rehearing or certification of this issue as a question of great public importance. The Fourth District denied rehearing but certified the above question to be of great public importance. See State v. Smiley, 944 So.2d 1027, 1028 (Fla. 4th DCA 2006). Smiley filed a notice to invoke discretionary jurisdiction with this Court on June 21, 2006, and we granted review. See Smiley v. State, 937 So.2d 123 (Fla.2006) (table).

ANALYSIS
The proper standard of review in this case is de novo review. The issue of whether section 776.013 is applicable to cases pending at the time of its enactment is a pure question of law. Notwithstanding that Bunkley v. State, 833 So.2d 739 (Fla.2002), determined whether a change in the decisional law should receive retroactive application, the conclusion of this Court in Bunkley that de novo review was the proper standard is also applicable here with regard to whether a change in the statutory law should receive retroactive application. See id. at 741 (discussing that the issue of whether a decision of this Court should receive retroactive application is a pure question of law that is subject to de novo review).

I. Change in Decisional Law Versus Statutory Law
In the analysis of this certified question, the first distinction with regard to retroactive application of changes in the law is that between decisional law and statutory law. In Florida, the Witt[2] analysis determines whether a change in the decisional law will receive retroactive application:
[F]or a change of law to be applied retroactively it must: (1) originate in [the Supreme Court of Florida] or the United States Supreme Court; (2) be constitutional in nature; and (3) represent a development of fundamental significance.
New v. State, 807 So.2d 52, 53 (Fla.2001) (citing Witt, 387 So.2d at 931). Contrary to the argument of Smiley, the decision of this Court in Weiand v. State, 732 So.2d 1044 (Fla.1999), is not applicable to resolve the current question of whether section 776.013 should apply to pending cases, because Weiand determined the retroactivity of a change in the decisional law. See id. at 1058 (holding that the rule established in Weiand, which was that a defendant had *334 no duty to retreat from his or her residence before using deadly force to prevent death or great bodily harm from a co-occupant, would apply to all cases that were pending but not to convictions that were final). Conversely, a different analysis must be applied to determine the question of whether a change in the statutory law, such as with section 776.013, should receive retroactive application. See Thompson v. State, 887 So.2d 1260, 1263-64 (Fla. 2004) ("[T]he question of retroactivity under Witt is not applicable to this case because we are examining a change in the statutory law of this state not a change in decisional law. . . . ").

II. Procedural/Remedial Change Versus Substantive Change
In the analysis of a change in statutory law, a key determination is whether the statute constitutes a procedural/remedial change or a substantive change in the law. The rule for procedural/remedial changes, in contrast to the presumption against retroactive application for substantive changes, is as follows:

Remedial statutes or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.
City of Lakeland v. Catinella, 129 So.2d 133, 136 (Fla.1961) (emphasis added). Moreover, the "presumption in favor of prospective application generally does not apply to `remedial' legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose." Arrow Air, Inc. v. Walsh, 645 So.2d 422, 424 (Fla.1994) (citing City of Orlando v. Desjardins, 493 So.2d 1027 (Fla.1986)). Finally, a statute that achieves a "remedial purpose by creating substantive new rights or imposing new legal burdens" is treated as a substantive change in the law. Arrow Air, Inc., 645 So.2d at 424.
The primary effect of section 776.013 is to specifically incorporate "no duty to retreat" for certain situations when deadly force can immediately occur without needing to first retreat. The language is as follows:
(3) A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
§ 776.013(3), Florida Stat. (2005) (emphasis added). To aid the determination of whether a person had a reasonable belief that self-defense was needed or a forcible felony was intended, section 776.013 also created the following two presumptions:[3]
(1) A person is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or great bodily harm to another if:

*335 (a) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a dwelling, residence, or occupied vehicle, or if that person had removed or was attempting to remove another against that person's will from the dwelling, residence, or occupied vehicle; and
(b) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
. . . .
(4) A person who unlawfully and by force enters or attempts to enter a person's dwelling, residence, or occupied vehicle is presumed to be doing so with the intent to commit an unlawful act involving force or violence.
§ 776.013(1),(4), Fla. Stat. (2005) (emphasis added). This legislation clearly constitutes a substantive change in the law, rather than a procedural/remedial change in the law, because it alters the circumstances in which it is considered a criminal act to use deadly force without first needing to retreat. See State v. Garcia, 229 So.2d 236, 238 (Fla.1969) ("As related to criminal law and procedure, substantive law is that which declares what acts are crimes and prescribes the punishment therefor. . . . ").
The duty to retreat in Florida is a product of the common law. See Weiand, 732 So.2d at 1049 (citing Hedges v. State, 172 So.2d 824, 827 (Fla.1965)). Although the duty to retreat has been previously qualified in Florida through case law, section 776.013 establishes a "no duty to retreat" rule in a broad context that had not previously existed. Prior to this legislation, case law established that a person was not required to retreat from his or her residence before resorting to deadly force in self-defense if the deadly force was necessary to prevent death or great bodily harm. See Pell v. State, 97 Fla. 650, 122 So. 110, 116 (1929). Although such examples of the right to use deadly force without first retreating existed prior to the enactment of section 776.013, the broad context of this legislation (i.e. "not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be") establishes that there is no duty to retreat before using deadly force in numerous other situations that the case law had not previously established. For example, the specific right of Smiley to use deadly force in self-defense in his taxi did not exist prior to section 776.013. Neither the decisional law nor the statutory law had established the right to use deadly force in self-defense in a motor vehicle. Compare Redondo v. State, 380 So.2d 1107, 1110 (Fla. 3d DCA 1980) (holding that the castle doctrine extends to a place of business), quashed in part on other grounds, 403 So.2d 954 (Fla.1981) with Baker v. State, 506 So.2d 1056, 1059 (Fla. 2d DCA 1987) (holding that the castle doctrine does not extend to automobiles). Moreover, this Court previously held that a new jury instruction on self-defense, which was not related to section 776.013 but did come from a statutory change in the law, was substantive. See Fla. Bar re Standard Jury Instructions Criminal Cases, 477 So.2d 985, 986 (Fla.1985) (discussing that the new jury instruction for the justifiable use of force in resisting arrest under section 776.051(c), Florida Statutes (1985), was of a "substantive nature") (quoting committee report). Finally, section 776.013 is analogous to section 775.051, which abrogated the affirmative defense of voluntary intoxication. Although section 776.013 created a new affirmative defense for situations in which one may use deadly force without first retreating, rather than *336 abrogating an affirmative defense as occurred with section 775.051, the classification by this Court of section 775.051 as a substantive change in the law is analogous and applicable in the analysis of section 776.013. See Troy v. State, 948 So.2d 635, 645 (Fla.2006) (adopting the reasoning in Barrett v. State, 862 So.2d 44, 48 (Fla. 2d DCA 2003), that although section 775.051 has procedural elements that are closely related to the substantive elements of the statute, section 775.051 constitutes a substantive change in the law). Whether a statute creates or abrogates an affirmative defense, both statutes significantly change the affirmative defenses available to defendants. For all these reasons, we conclude that section 776.013 is a substantive change in the statutory law.

III. Metropolitan Dade County Test
Based upon this determination that section 776.013 constitutes a substantive change in the statutory law, a presumption of prospective application must therefore underlie the further analysis of this legislation. See Metropolitan Dade County v. Chase Federal Housing Corp., 737 So.2d 494, 499 (Fla.1999) ("The general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties is presumed to apply prospectively."). To rebut this presumption against retroactive application, such legislation is generally subjected to the following two interrelated inquiries:
The first inquiry is one of statutory construction: whether there is clear evidence of legislative intent to apply the statute [retroactively]. If the legislation clearly expresses an intent that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible.

Id. (citations omitted) (emphasis added). Due to the clear constitutional prohibition against retroactive application of section 776.013, which is more fully described below, we do not address the first inquiry of legislative intent as to whether the presumption against retroactive application is rebutted here.
The Florida Constitution imposes a restriction on retroactive application of criminal legislation. Article X, section 9 of the Florida Constitution has the following language:
Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.
(Emphasis added.) As the State correctly argues, this constitutional provision precludes section 776.013 from applying retroactively to pending cases.[4] The key determination is that section 776.013 qualifies as *337 a "criminal statute." With regard to article X, section 9, the term "criminal statute" is defined in a broad context. In Washington v. Dowling, 92 Fla. 601, 109 So. 588 (1926), this Court provided the following definition for the words "criminal statute": "[A]n act of the Legislature as an organized body relating to crime or its punishment . . . defining crime, treating of its nature, or providing for its punishment . . . [or] deal[ing] in any way with crime or its punishment." Id., 109 So. at 591. In the instant matter, section 776.013 qualifies as a "criminal statute," because it has a direct impact on the prosecution of the offense of "murder" in Florida. Cf. State v. Watts, 558 So.2d 994, 999-1000 (Fla. 1990) (holding that article X, section 9 did not prevent retroactive application of the legislation, because the parties could still "be prosecuted and punished in the same manner") (quoting Ex parte Pells, 28 Fla. 67, 9 So. 833, 834-35 (1891)). Unlike the defendant in Watts, Smiley could not be prosecuted in the same manner because retroactive application of section 776.013 would provide him with a new affirmative defense to the first-degree murder charge (i.e., he had no duty to retreat before he used deadly force in self-defense in his taxi).[5] Therefore, article X, section 9 of the Florida Constitution makes it constitutionally impermissible for section 776.013 to receive retroactive application.

CONCLUSION
For the foregoing reasons, we answer the certified question in the negative and hold that section 776.013 does not apply to the charge against Smiley, which is based on conduct that allegedly occurred prior to the October 1, 2005, effective date of this legislation. Accordingly, we approve the Fourth District's decision below and remand with instructions to return the case to the trial court.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] This doctrine provides the exception that a person is not required to retreat when attacked in his or her home. See Smiley, 927 So.2d at 1002 (citing Weiand v. State, 732 So.2d 1044 (Fla.1999)).
[2] Witt v. State, 387 So.2d 922 (Fla.1980).
[3] A staff analysis prepared on February 25, 2005, for the Legislature's judiciary committee stated the following with regard to this proposed legislation: "[l]egal presumptions are typically rebuttable . . . presumptions created by the committee substitute, however, appear to be conclusive." (Emphasis added). We do not here address or consider the validity of conclusive presumptions.
[4] The argument of Smiley that the State is procedurally barred from asserting this argument with regard to article X, section 9 is refuted by the record on appeal. As a general rule, to preserve error for appellate review, a contemporaneous, specific objection must occur during trial at the time of the alleged error. See F.B. v. State, 852 So.2d 226, 229 (Fla.2003); Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982). This gives the trial judge notice of the alleged error, so that it may be corrected at an early stage. See F.B., 852 So.2d at 229. In the instant matter, the trial level proceedings were stayed to permit the issue of whether section 776.013 applies to pending cases to be decided at the appellate level. Therefore, this was not the typical scenario in which an error occurred at trial, but the trial judge never had an opportunity to correct the error due to the failure to object, which allowed a flawed trial to continue to proceed uninterrupted. Instead, the State did object to the proposed jury instruction requested by Smiley that incorporated section 776.013. The State made an argument with regard to article X, section 9 when the Fourth District ordered both the State and Smiley to "include in their response and/or reply a discussion of the application of Article X, Section 9, of the Florida Constitution." State v. Smiley, No. 4D06-479 (Fla. 4th DCA Feb. 8, 2006). Accordingly, the practical effect of a specific, contemporaneous objection occurred here as the Fourth District was on notice of the alleged error with regard to article X, section 9, which allowed that court to consider this issue in its decision. See Smiley, 927 So.2d at 1003.
[5] It should be noted that despite creating a new affirmative defense in this situation, section 776.013 did not alter the definition or elements of the murder statute under section 782.01, Florida Statutes (2006). See State v. Cohen, 568 So.2d 49, 51-52 (Fla.1990) ("An affirmative defense does not concern itself with the elements of the offense at all; it concedes them."). Notwithstanding this distinction, retroactive application of section 776.013 would directly affect the ability to successfully prosecute Smiley under section 782.01.