DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RONALD HIGHT JR.,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-4261

[August 8, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 502013CF000220A.

Carey Haughwout, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, Christopher Baum, Deputy Solicitor General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

In 2012, appellant was charged with second-degree murder. Appellant filed a motion to dismiss under section 776.032 of the Stand Your Ground law and a pre-trial immunity hearing took place in 2014. After the denial of his motion, appellant went to trial and was convicted of a lesser included offense, manslaughter, in 2016. Appellant appealed his conviction. During the pendency of his appeal, the legislature amended section 776.032 by adding subsection (4) which took effect upon the amendment becoming law on June 9, 2017. This amendment shifted the burden of persuasion from the defendant to the state and additionally changed the burden of proof utilized from preponderance of the evidence to clear and convincing evidence.

Thus, we are confronted with this dispositive issue: Are the changes in subsection (4) procedural or substantive? Should we apply the changes retroactively or prospectively from the date the changes became law? We find that the amendment adding subsection (4) is a substantive change to the law, and as such, applies only prospectively from the date

of enactment. We therefore find that appellant is not entitled to a new Stand Your Ground hearing pursuant to the amendment, and as such, we affirm. We find the other issues raised by appellant to be without merit and we affirm on those grounds without discussion.

Appellant was charged with second-degree murder of the victim, Craig Rivera. Appellant filed a motion to dismiss based on immunity under section 776.032 of the Stand Your Ground law. The case subsequently proceeded to a pre-trial immunity hearing.

The victim was appellant's boss. The victim regularly drove appellant to and from work. On the day in question, appellant had a birthday party at appellant's house. The victim arrived at the party drunk. The partygoers were gathered outside around the fire pit when the victim became increasingly agitated and angry as the victim received repeated telephone calls from his children. Appellant testified that he retrieved his gun because the victim's behavior scared him. People began to leave due to the victim's behavior. Appellant and the victim remained outside.

According to appellant, he and the victim were talking when the victim said he was going to "f--k" appellant up. The victim ran towards him and appellant pulled out the gun. The victim said, "I'm not scared of that" and went to hit appellant so appellant shot him. On cross-examination, appellant admitted the victim had never been physically violent towards him.

Appellant's brother testified that he went outside just as the shooting occurred. According to the brother, appellant looked "petrified and scared," and the victim's arm was "in the process of reaching out" when appellant shot him.

In a videotaped statement to police, appellant described the victim as a father figure, his best friend, and someone he looked up to. Appellant also described the victim as violent. Appellant claimed that the victim regularly threatened him and that appellant remained friends with the victim only to keep his job.

During the police interview, appellant stated that he and the victim were talking when the victim told appellant that he was going to "f--k" him up. The victim then rushed towards appellant with his fists balled up to fight so appellant shot him. Appellant twice demonstrated to the police what transpired. In both instances, appellant demonstrated that the victim rushed towards him with his arms down by his sides. During

the second instance, appellant demonstrated that the victim's shoulder bumped appellant's chest.

At one point in the interview, appellant stated that he had the gun in his pocket because the victim had threatened to hit him earlier in the day. At another point in the interview, appellant said that he went into the house and put the gun in his pocket after the victim told appellant he was going to "f--k" him up.

After the Stand Your Ground immunity hearing, the trial court entered an order denying the motion to dismiss. The trial court found that the evidence established that the victim was a "bully" and that appellant armed himself "because of on-going events with [the victim]." Based on appellant's videotaped statement, the court found that the contact between appellant and the victim was "the equivalent of a chest bump." "While [the victim] may have moved his hands forward, there was no evidence to support the conclusion that [the victim] was throwing a punch." The testimony of appellant's brother was "consistent with the shoulder bump described by [appellant]."

The trial court noted that the victim had never struck appellant before. The court found that "[t]he facts of the encounter support a machismo display by [the victim], but not a demonstrable attempt to physically harm the Defendant." After characterizing the case as a "close call," the court concluded that appellant had not met his burden of proving by a preponderance of the evidence that a reasonable person would conclude that deadly force was necessary to prevent imminent death or great bodily harm.

The case proceeded to a five-day trial. The jury found appellant guilty of the lesser included offense of manslaughter. Appellant appealed.

Appellant argues that this statutory amendment should apply since he claims the changes to the burden of proof were procedural in nature and thus should be applied retroactively. The state argues that the statute did not go into effect until June 9, 2017, which was after the commission of the crime, after the pre-trial Stand Your Ground immunity hearing, and even after the notice of appeal was filed in this case. The state further argues that the amendment imposed a new legal burden and thus is a substantive change that applies only prospectively from the date of enactment.

We review whether a statute applies retroactively under the de novo standard. *Smiley v. State*, 966 So. 2d 330, 333 (Fla. 2007).

3

In 2005, the Florida Legislature enacted the Stand Your Ground law and by statute eliminated the common law duty of an individual to retreat before using force in self-defense. § 776.012(1), Fla. Stat.; *Kumar v. Patel*, 227 So. 3d 557, 559 (Fla. 2017). The statute also provides immunity for those who lawfully use force in self-defense. § 776.032, Fla. Stat. The Florida Supreme Court subsequently determined in *Bretherick v. State*, 170 So. 3d 766, 775 (Fla. 2015), that a defendant has the burden of proof in a pre-trial Stand Your Ground immunity hearing and that the defendant has to prove by a preponderance of evidence that the defendant's "use of force was justified, as specified by statute."

Following the issuance of *Bretherick*, and while this appeal was pending, the Florida Legislature amended section 776.032 and added subsection (4), which states:

> In a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

The legislature provided that "[t]his act shall take effect upon becoming a law," which occurred when the governor signed the bill into law on June 9, 2017. Ch. 2017-72, § 1-2, Laws of Fla.

The amendment shifted the burden of persuasion from the defendant to the state. The amendment also changed the quantum of proof required from preponderance of the evidence previously required of the defendant to clear and convincing evidence now required of the state, after the defendant makes a prima facie claim of self-defense immunity.

We find that the amended subsection (4) of the Stand Your Ground statute does not apply in this case. The crime, the Stand Your Ground hearing, and the trial all occurred before the June 2017 subsection became effective. Thus, the amendment has no retroactive effect since it is a substantive, not a procedural, change in the law.

The Florida Supreme Court has given guidance when determining "whether the statute constitutes a procedural/remedial change or a substantive change in the law." *Smiley*, 966 So. 2d at 334. The "presumption in favor of prospective application generally does not apply to 'remedial' legislation; rather, whenever possible, such legislation

4

should be applied to pending cases in order to fully effectuate the legislation's intended purpose." *Id.* (quoting *Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 424 (Fla. 1994)). However, "a statute that achieves a 'remedial purpose by creating substantive new rights or *imposing new legal burdens*' is treated as a substantive change in the law." *Id.* (emphasis added) (quoting *Arrow Air*, 645 So. 2d at 424).

In this case, there can be no doubt that the imposition of new burdens of persuasion and proof upon the state under subsection (4) is a "substantive change in the law" due to the creation of "new legal burdens." *See Smiley*, 966 So. 2d at 334. Requiring the state to go forward with clear and convincing evidence after the defendant's initial prima facie claim is clearly a "new legal burden." *See id.* "The amendment is thus treated as a substantive change in the law, and therefore does not apply retroactively." *Love v. State*, 43 Fla. L. Weekly D1065, D1066 (Fla. 3d DCA May 11, 2018), *review granted*, SC18-747, 2018 WL 3147946 (Fla. June 26, 2018).

In *Love*, the trial court refused to apply the newly enacted subsection (4) even though the amendment took place before the defendant's Stand Your Ground immunity hearing. The trial court applied the burden of proof applicable before the amendment and found that the defendant did not meet her burden. Relying on *Smiley*, the Third District affirmed, finding that the amendment "did not apply to [the defendant's] case because the crime she committed occurred before the amendment's effective date, and the statute has no retroactive application." *Id.* at D1065. In the case at bar, unlike in *Love*, the amendment occurred after both the immunity hearing and trial. Because the amendment did not apply in *Love*, then it certainly does not apply here where the amendment occurred after the end of all the trial court proceedings.

The Third District further relied on Article X, section 9 of the Florida Constitution, commonly known as the "Savings Clause," which provides that "[r]epeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed." A "criminal statute" is broadly defined as "an act of the Legislature as an organized body relating to crime or its punishment . . . defining crime, treating of its nature, or providing for its punishment . . . [or] deal[ing] in any way with crime or its punishment." *Love*, 43 Fla. L. Weekly at D1066 (quoting *Smiley*, 966 So. 2d at 337) (alterations in original).

The Third District concluded that

> section 776.032(4) qualifies as a criminal statute because it

affects whether the State can prosecute a defendant in the same manner as before subsection (4) was added. If the amended statute were to apply to [the defendant], she could not be prosecuted in the same manner as before because the burden of proof at the immunity hearing would now shift to the State and the burden would rise to clear and convincing evidence. Thus, article X, section 9 of the Florida Constitution does not allow section 776.032 to be applied retroactively. *Smiley*, 966 So. 2d at 337 ("[The defense] has a direct impact on the prosecution of the offense . . .").

*Id. See also Bailey v. State*, 43 Fla. L. Weekly D1153, D1153 (Fla. 3d DCA May 23, 2018) (following precedent in *Love* and holding that amendment did not apply retroactively and defendant was not entitled to new evidentiary hearing); *but see Commander v. State*, 43 Fla. L. Weekly D1554, D1555 (Fla. 1st DCA July 9, 2018) (finding subsection (4) applied to a 2016 incident due to the state's concession of error on appeal based on the prosecutor's agreement at the Stand Your Ground immunity hearing that the state had the burden of proof); *Martin v. State*, 43 Fla. L. Weekly D1016, D1018 (Fla. 2d DCA May 4, 2018) (holding that the 2017 amendment to section 776.032 was procedural in nature and therefore applied retroactively to the defendant's case which was pending on appeal).

We agree with the Third District in *Love* in its reliance on the Savings Clause of the Florida Constitution. Under the Savings Clause, "retroactive application of an amended or repealed statute affecting prosecution or punishment is unconstitutional." *State v. Pizarro*, 383 So. 2d 762, 763 (Fla. 4th DCA 1980). In contrast with "[t]he Ex Post Facto Clause, which bars retrospective application of a law that disadvantages a defendant, . . . the Savings Clause . . . bars retrospective application of a change in law that prejudices the State." *McKendry v. State*, 641 So. 2d 45, 49 (Fla. 1994) (Shaw, J., dissenting). Thus, the Savings Clause differs from the Ex Post Facto Clause since the Savings Clause forbids retroactive application of legal changes whether beneficial or harmful to the defendant, as its purpose is to forbid the application of legal changes that would harm the state.

In addressing a prior version of the Savings Clause that is similar to the current version, the Florida Supreme Court stated:

The effect of this constitutional provision is to give to all criminal legislation a prospective effectiveness; that is to say, the repeal or amendment, by subsequent legislation, of a

pre-existing criminal statute, does not become effective, either as a repeal or as an amendment of such pre-existing statute, in so far as offenses are concerned that have been already committed prior to the taking effect of such repealing or amending law.

*Raines v. State*, 28 So. 57, 58 (Fla. 1900).

For example, under the Savings Clause, the statutory penalty in effect at the time a crime is committed controls the punishment at sentencing. *Pizarro*, 383 So. 2d at 763. This is true even if retroactive application would be beneficial to the defendant. *See Allen v. State*, 383 So. 2d 674, 675 (Fla. 5th DCA 1980) (noting that "if the Legislature, in enacting the Youthful Offender Act had purported to make its maximum punishment provisions apply retroactively to crimes committed prior to its effective date, it would have been unconstitutional" under the Savings Clause); *Monsour v. State*, 572 So. 2d 18, 19 (Fla. 4th DCA 1990) (stating, in dicta, that ameliorative retroactive application of amended sentencing guidelines would violate the Savings Clause). Because the Savings Clause applies to both the prosecution of crimes as well as their subsequent punishment, those cases involving only punishment would apply with equal force to the instant case involving the burden of proof and persuasion required for a prosecution.

We are also guided by the governing principle of separation of powers which requires our deference to the legislature when the legislature clearly states in the text of the statute that "[t]his act shall take effect upon becoming law." As our supreme court has recognized, "the judiciary has an obligation, pursuant to the separation of powers contained in article II, section 3 of the Florida Constitution, to construe statutory pronouncements in strict accord with the legislative will." *Sebring Airport Auth. v. McIntyre*, 783 So. 2d 238, 244 (Fla. 2001) (footnote omitted). "[C]ourts cannot judicially alter the wording of statutes . . . . A court's function is to interpret statutes as they are written and give effect to each word in the statute." *Fla. Dep't of Revenue v. Fla. Mun. Power Agency*, 789 So. 2d 320, 324 (Fla. 2001).

The effective date of the statute has meaning and represents the will of the legislature. A statute that provides an unambiguous effective date is clear and controlling evidence of legislative intent. *See State Farm Mut. Auto. Ins. Co. v. W. Gables Open MRI Servs., Inc.*, 846 So. 2d 538, 540 (Fla. 3d DCA 2003). In amending the statute, the legislature stated that "[t]his act shall take effect upon becoming a law," which occurred when the governor signed the bill into law on June 9, 2017. Ch. 2017-72, § 1-

2, Laws of Fla.  "[T]he Legislature's inclusion of an effective date for an amendment is considered to be evidence rebutting intent for retroactive application of a law." *Fla. Ins. Guar. Ass'n v. Devon Neighborhood Ass'n*, 67 So. 3d 187, 196 (Fla. 2011); *see also Walker & LaBerge, Inc. v. Halligan*, 344 So. 2d 239, 241 (Fla. 1977) ("It is a well-established rule of construction that in the absence of clear legislative expression to the contrary, a law is presumed to operate prospectively.").

In conclusion, we find that the amendment to the Stand Your Ground law, which occurred during the pending appeal and contained an effective date of June 9, 2017, created a new legal burden by changing both the burdens of persuasion and proof and therefore was substantive in nature and did not apply retroactively.  As such, we affirm appellant's conviction and sentence and certify conflict with *Martin* and *Commander*.

*Affirmed and conflict certified.*

DAMOORGIAN and KUNTZ, JJ., concur.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***