985 So.2d 1243 (2008)
G.V., the mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
Nos. 4D07-4988 to 4D07-4990.
District Court of Appeal of Florida, Fourth District.
July 23, 2008.
*1244 Karen Martin, West Palm Beach, for appellant.
Jeffrey Dana Gillen, West Palm Beach, for appellee.
STONE, J.
G.V., the mother, appeals an order denying her motion for reunification with her children and an order terminating the department's protective supervision, permanently placing the children with their custodians.
We reverse because the record reflects that the mother substantially complied with her case plan and because the trial court's finding that reunification posed a danger to the children is not supported by competent substantial evidence.
In May of 2007, the mother consented to dependency adjudication of her two children. The mother had a history of mental health issues, including a diagnosis of bipolar disorder with anger or anxiety difficulties. One child was placed in custody with the maternal grandmother, and the other with his father. The trial court approved a case plan with a reunification goal date of November 12, 2007.
Following a hearing, the trial court found that the mother had completed the case plan for reunification. Nevertheless, the court had concerns for the safety of the children, apparently because the court reasoned that the mother had continued to deny the seriousness of her problems and had discontinued using medication without permission from her physician.
The primary witness relied on by the trial court, Dr. Maria, had evaluated the mother in May of 2007, six months prior to the hearing. Dr. Maria's testimony, that she believed the children were at risk and that it was unlikely that additional services would make reunification possible, was based solely on that earlier evaluation. Dr. Maria's opinion was based on the mother's failure to acknowledge, in May of 2007, the serious nature of her illness, and her failure to cooperate with treatment. Dr. Maria acknowledged that she had not updated her information, was unaware of any medications that the mother was taking at the time of the hearing, and that she did not contact the mother's current therapist.
A case manager, who testified that reunification would not be in the children's best interests, also had no current information to sustain her opinion. She recounted how the mother was irritated about the discontinuation of family therapy, but that outside of a single incident, she had not seen the mother "act irrationally, [or] irritable." The basis for her opinion was Dr. Maria's initial report.
The witness was also asked about her statement that the mother does not acknowledge her illness:
The Mother in fact sees her psychiatrist regularly, correct?
A. Correct.
Q. Mother takes her medication, correct?
A. I can't say she does, I'm not there when she drinks it. But according to her, yes.
Q. Okay. And the Mother participates in therapy on a regular basis, correct?
A. Her individual therapy, correct.
The record does not indicate any current basis for the case manager's assertion that *1245 the mother does not acknowledge her illness.
The father, opposing the mother's motion, also added nothing new to support denying reunification. He stated that the mother once hit one of the children, without leaving a bruise, and that she, in the past, had yelled and cursed when angry.
A case management supervisor from the Children's Home Society testified that the mother, during the first six months of the case, was angry, hostile, and belligerent, in complaining that she was forced to attend classes and that they opposed giving her children back. It was also the supervisor's view that "she uhm, is able to kind of play for the  for the scene you know. She knows when to behave and when not to behave, and when Kids  you know, when we're going to find out the information and when we're not."
One of the child's therapists testified to the child's stress and adjustment disorder and stated that the child was "very confused with her loyalties." But when asked "do you think that she would be safe if she went back to the Mother's house," she replied:
Well, all right. Based on what I have seen in uhm, the DCF file, based on the history I have  and I have to say that I do not know the Mother personally nor have I met her; the biological Mother, uhm, but based on what I know when I work with these Children I don't really know if it would be safe at this time. I think there might be more work to be done.
The other child's case manager supervisor opined that staying in the custody of his father was in the child's best interest. However, she acknowledged that neither she nor her case workers ever visited with the mother.
In contrast, the mother presented the testimony of her current psychiatrist, Dr. Griff, and her psycho-therapist. Dr. Griff stated that the mother does comply with medication orders and that she has met her appointments. At the time of the hearing, the mother was taking medications for bi-polar disorder and anxiety, panic attacks. In Dr. Griff's opinion, the children would not be in danger if they were returned to live with the mother. During re-direct examination, the trial judge stepped in and inquired about the mother's history of taking medication.
THE COURT: Well, was there  before she came in [in 2006] was there a time that she was not pregnant and not taking medication?
THE WITNESS: Yes, there was. There was a brief period of time.
* * *
THE COURT: To 2006 to date, does Mom continuously taking [sic] the medication?
THE WITNESS: Yes, she does. Well, she  I think there was one brief bought again in relating to the pregnancy where she wasn't taking them.
The mother's psycho-therapist, who had sixteen weekly sessions with the mother, over a four month period, testified about the mother's mental condition. She thought that the mother can seek help when necessary:
And she's been compliant with her medication. She goes and gets her medication, takes it on her  on a continued basis. She shows me some of the bottles that she has taken some of the medicine, and not too much of it or too little of it.
Q. Okay. She's taking it as prescribed?
A. Yes, she's taking it as prescribed. So I feel that that's seeking out the medical treatment and with the help *1246 that she needs and following through with it.
Ultimately, the psycho-therapist strongly recommended reunification.
Section 39.522(2), Florida Statutes, provides that:
In cases where the issue before the court is whether a child should be reunited with a parent, the court shall determine whether the parent has substantially complied with the terms of the case plan to the extent that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by the return of the child to the home.
Courts have recognized that "[c]ompliance with a case plan with a goal of reunification requires that the child be returned to his parent(s) if the court is satisfied that reunification will not be detrimental to the child's safety, well-being, and physical, mental, and emotional health." In re H.H. & R.W. v. Dep't of Children & Family Servs., 865 So.2d 634, 635 (Fla. 2d DCA 2004) (internal quotations omitted) (emphasis added). A trial court's findings as to the risks to the child or children's safety or mental or emotional health, however, must be based on objectively reasonable grounds. See C.D. v. Dep't of Children & Families, 974 So.2d 495, 499 (Fla. 1st DCA 2008) (holding that trial court's finding of detriment to the child was "not based on any specific findings, and therefore, [was] not reasonably objective").
Further, section 39.621(10), Florida Statutes, directs the trial court to consider the following six factors in deciding the parent's motion for reunification:
(a) The compliance or noncompliance of the parent with the case plan;
(b) The circumstances which caused the child's dependency and whether those circumstances have been resolved;
(c) The stability and longevity of the child's placement;
(d) The preferences of the child, if the child is of sufficient age and understanding to express a preference.
(e) The recommendation of the current custodian; and
(f) The recommendation of the guardian ad litem, if one has been appointed.
§ 39.621(10), Fla. Stat. (2006); see also C.D., 974 So.2d at 500. "A finding regarding each of these factors is mandatory and vital to a proper order denying reunification." C.D., 974 So.2d at 500-01 ("[I]nstead of documenting detailed factual findings with regard to each of the six factors, the trial court made the conclusory finding that reunification was not in the children's best interests").
In C.D., the record failed to support the trial court's conclusion that reunification would endanger the children, resulting in reversal and remand for reunification. Id. at 501-03. There, the First District reviewed the record and found that opinions opposing reunification that came from the caseworker and the guardian ad litem lacked a factual basis. Id. at 502 (reasoning that the witnesses' opinions that the mother would repeat the same mistakes upon reunification "were untested assertions based on one previous occurrence"). The C.D. court said, "[w]hile the trial court is permitted, and indeed required, to consider the opinions of the caseworker and guardian ad litem, it cannot base its decision on unsupported assertions." Id.
Similarly, the C.D. court clarified that where, at some time in the past, a therapist opined that it was not in the child's best interests to see a parent, such testimony "does not provide a substantial basis *1247 for a conclusion that on the date of the hearing, the mother posed a detriment to [the child]." Id. at 502-03. The C.D. court also dismissed as an insufficient basis for the decision a doctor's initial evaluation of the mother that "took place in the very early stages of her case." Id. at 503.
Here, the trial court found that although the mother complied with the case plan, "there is continued concern for the physical and mental safety of the child." The department's only witnesses, however, did not base their opinions opposing reunification on the statutory ground of endangerment to the children's "safety, well-being, and physical, mental, and emotional health." § 39.522(2), Fla. Stat. Rather, their views were based on their experience in working with the children, or on speculation based on older evaluations prepared prior to the mother's subsequent therapy sessions and compliance with the case plan.
In the few instances where the testimony related to the mother's current conduct, it was not related to risk to the children, but to the mother's expressions of frustration and disagreement with the system.
Similarly, other than unsupported assertions, the record lacks competent substantial evidence for the trial court's finding that the mother fails to acknowledge her illness. Indeed, the mother's treating psychiatrist and her psycho-therapist testified to the mother maintaining her appointments and taking her prescriptions.
Because the trial court found that the mother completed the tasks in her case plan, the sole issue is whether competent substantial evidence supports the trial court's permanent rejection of reunification based on safety risk to the children. However, as the C.D. court clarified:
When a parent has requested reunification and substantially complied with her case plan, there is a presumption that the children should be returned. This presumption may be overcome by a finding that returning the children would endanger them.
C.D., 974 So.2d at 500.
Here, the record fails to support the trial court's finding that the mother did not acknowledge or positively deal with her mental condition, thus endangering the children. It is apparent that the order rests on unsupported conclusions that the circumstances existing prior to adoption of the case plan were unresolved. We conclude that such evidence, given the testimony of the mother's current doctor and therapist, is not sufficient to rebut the statutory presumption in favor of reunification.
Accordingly, we reverse the order denying reunification and granting termination of the department supervision, and remand for modification, without prejudice to the department's right to seek further relief in the event of changed or intervening circumstances.
FARMER and KLEIN, JJ., concur.