PER CURIAM.
The appellant is the mother of two children, K.B. (age nine at the time of the proceedings below) and A.V. (age three). She appeals an order denying her motion for reunification with K.B. in a circuit court dependency case following her substantial compliance with the tasks in her case plan. She has also appealed orders approving a general magistrate’s report finding that custody of K.B. should remain with her father (with visitation by her mother), terminating supervision by the Department of Children and Families (DCF), and terminating the circuit court’s jurisdiction. This case requires us to consider the applicability of different and apparently inconsistent statutory provisions relating to reunification, sections 39.522(2)[1] and 39.621(10),[2] Florida Statutes (2010).
*689 We reverse the orders below, and remand the case for a restoration of the status quo and further proceedings, because we find that section 39.522(2) was applicable, that neither DCF nor the Guardian Ad Litem (GAL) proved (nor did the magistrate or trial court find) endangerment of the “safety, well-being, and physical, mental, and emotional health of the child”[3] pursuant to that provision, and that the permanency determination granting custody to KB.’s father instead incorrectly applied the “best interest” factors set forth in section 39.621(10).
I. Background
The dependency case was opened in February 2010 when, according to the initial affidavit and petition, the appellant/mother “neglected and placed her child [A.Y.] in danger by leaving her in the care of her paramour ... while he was intoxicated and under the influence of alcohol.” Following the “paramour’s” arrest for DUI with A.V. in the car, the police and DCF child protective investigators also determined that KB. was at risk and placed K.B. with her father. The following month, the mother consented to the allegations in the petition and to the placement of K.B. in the temporary custody of the father, ultimately with supervised visitation by the mother. Prior to the filing of the petition, the mother had custody of both children and KB.’s father had visitation with her. The approved DCF case plan specified that the primary goal was for KB. to be reunited with her “parents,” with a concurrent goal of remaining with her father. The plan noted the mother’s stated willingness to cooperate with services.
The mother’s tasks and services generally required her to cooperate with assessment and evaluation, to authorize the release of appropriate records and information to DCF and the GAL Program, to participate in supervised visits with K.B., to complete a course of psychotherapy as well as classes on parenting skills and domestic violence, to contribute financially to the care of her younger child, and to demonstrate stable housing and income. The trial court approved the case plan in April 2010, and the mother began to perform those tasks assigned to her. Compliance was monitored by DCF staff and contractors. The mother exercised her visitation rights. In January 2011, the mother was reported by DCF to be in substantial compliance with her plan. The primary goal of that plan was still the reunification of K.B. with her parents, and the mother moved for reunification.
The following month, the general magistrate conducted a hearing on the motion for reunification and (simultaneously) for judicial review and permanency. The general master found, and the trial court approved those findings, that: KB.’s father was a non-offending parent with a “presumptive right to custody” pending any reunification; under section 39.521(3)(b)2, Florida Statutes (2010), changing custody back to the mother as a permanency disposition should be based on the “best interest of the child” standard and the six factors enumerated in section 39.621(10)(a) through (f); although the mother had “in general” complied with the tasks in her case plan and “the specific circumstances that caused the removal of the children are not present,” K.B. should remain in the custody of her father with regular visitation by the mother. Separate orders denied the mother’s exceptions to the general magistrate’s amended recommendations and order, terminated supervision by *690 DCF, and terminated the court’s jurisdiction. The mother’s appeal ensued.
II. Analysis
This Court has not previously addressed the inconsistency of the statutory reunification standards advanced by the parties in this case. We begin with the undisputed fact that the mother had custody of K.B. before the dependency case began. The second vital and undisputed fact is that the mother substantially complied with the tasks in her case plan, in effect reasonably relying on the prospect that KB. would be returned to her custody upon compliance.
KB. clearly enjoyed some stability in her father’s home during the pendency of the proceeding, and she testified that she would prefer to remain in her father’s custody, with visitation allowed for her mother and half-sibling. Nor do we question the general magistrate’s assessment of the “best interest” factors in section 39.621(10)(a) through (f).
The difficulty with the case is that a different statutory standard applies when a non-offending parent seeks to become the permanent custodial parent upon the closing of the dependency proceeding even though the offending parent, the mother, achieved her tasks for reunification. In such a circumstance, the controlling standard is set forth in section 39.522(2):
In cases where the issue before the court is whether a child should be reunited with a parent, the court shall determine whether the parent has substantially complied with the terms of the case plan to the extent that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by the return of the child to the home.
The general magistrate’s charge, therefore, was not to select the “better” permanency option. Instead, having determined that the mother substantially complied with her ease plan, the general magistrate was obligated to allow reunification with the mother unless that would “endanger” K.B. as described in section 39.522(2). Our application of these statutes is generally consistent with the analysis of the Second and Fifth Districts. In re A.F., 39 So.3d 1288 (Fla. 2d DCA 2010); M.M. v. Dep’t of Children & Families, 29 So.3d 1200 (Fla. 5th DCA 2010).[4] Two decisions of the Fourth District Court of Appeal, however, imply that the “best interests of the child” standard applies to reunification generally. C.S. v. Dep’t of Children & Families, 12 So.3d 309 (Fla. 4th DCA 2009); E.I. v. Dep’t of Children & Families, 979 So.2d 378 (Fla. 4th DCA 2008).[5]
In the case at hand, the appellees did not demonstrate, and the general magistrate did not find, that the “safety, well-being, and physical, mental, and emotional health of the child” would be endangered by reunification. We therefore reverse the orders below and remand the case to the trial court for further proceedings con *691 sistent with this opinion. Upon remand, the parties will be returned to the status quo (K.B.’s placement will remain with the father pending the further proceedings, with visitation by the mother) until the trial court considers whether reunification will “endanger” KB. under section 39.522(2). For the sake of all parties, and in particular K.B., we trust that any such proceedings will be conducted and completed expeditiously.
III. Conclusion
The “best interests” and “endangerment” standards are markedly different. The latter standard applies to a reunification or permanency hearing in which reunification is the primary goal and, as here, the offending parent has substantially complied with her or his case plan. As the incorrect standard was applied below, we reverse the circuit court orders and remand the case for further proceedings applying the correct “endangerment” standard.
Reversed and remanded, with directions.

. Section 39.522 is captioned "Postdisposition change of custody.” Subsection (2) provides:
In cases where the issue before the court is whether a child should be reunited with a parent, the court shall determine whether the parent has substantially complied with the terms of the case plan to the extent that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by the return of the child to the home.

. Section 39.621 is captioned "Permanency determination by the court.” Subsection (10) provides:
The court shall base its decision concerning any motion by a parent for reunification or increased contact with a child on the effect of the decision on the safety, well-being, and physical and emotional health of the child. Factors that must be considered and addressed in the findings of fact of the order on the motion must include:
(a) The compliance or noncompliance of the parent with the case plan;
(b) The circumstances which caused the child’s dependency and whether those circumstances have been resolved;
(c) The stability and longevity of the child’s placement;
(d) The preferences of the child, if the child is of sufficient age and understanding to express a preference;
(e) The recommendation of the current custodian; and
(f) The recommendation of the guardian ad litem, if one has been appointed.

. By separate order, the younger half-sibling, A.V., was reunified with the appellant. Any finding of endangerment of K.B. in the same home would seem to be inconsistent with the reunification of the younger child with the appellant.

. In A.F., the final paragraph directs the trial court to determine whether "reunification would be in the manifest best interests of A.F.,” and the citation to M.M. suggests that the statutory test is whether "reunification would be detrimental to the children.” A.F., 39 So.3d at 1289. We conclude that the statutory question, whether the child will be "endangered” by a return to the home, is the controlling inquiry.

. We have not certified conflict with these decisions because it is far from clear whether the cases and contentions of the parties are sufficiently similar to warrant that action. Additionally, in C.A. v. Department of Children & Families, 27 So.3d 241, 242-43 (Fla. 4th DCA 2010), the Fourth District clearly identified "endangerment” as the applicable standard.