CIKLIN, J.
The mother appeals the judicial review order pertaining to the child, A.L. The order, among other things, denied the mother’s motion for reunification with A.L. and placed the child in the custody of the father. The mother argues the court erred in denying her motion without a requisite finding that reunification would endanger the child. We agree with the Department of Children and Families (the *321 “Department”) that under a permitted retroactive application of an amended version of the applicable statute, the court could base its decision on a best interest of the child standard and did not err by doing so. However, because the amended version of the statute became effective on July 1, 2013, a date after the reunification hearing in this case, and because the mother may have chosen to present different or additional evidence below under the new standard, we reverse and remand for a new hearing on the mother’s motion.
Factual Background
In January 2012, the Department filed a dependency petition as to the mother’s four children, K.D., J.D., N.L., and A.L., the child who is the subject of this appeal. The Department alleged, among other things, that the mother’s drug addiction negatively affected the children, and that the children witnessed physical confrontations between the mother and her paramour. In March 2012, the mother entered a consent plea and the children were adjudicated dependent and placed in the care of the maternal grandmother. The court approved a case plan with a goal of reunification by November 19, 2012.
In June 2012, the Department filed an amended petition which alleged that the children were also dependent as to their respective fathers.[1] With respect to A.L., the amended petition alleged that her father never met her and failed to provide support for her. After the court held an adjudicatory hearing as to A.L.’s father, the court found insufficient evidence to adjudge A.L. dependent with respect to the father, and it dismissed the dependency petition against him. In that same order, the court confirmed the reunification goal as to the mother, found that placement of A.L. with the father would not endanger her, and ordered the child be reunified with the father, who resided in Kentucky. The child began residing with the father in late June or early July 2012.
By October 2012, the mother was in substantial compliance with her case plan tasks, according to a judicial review report. In December 2012, the mother filed a motion for reunification with all four children which resulted in reunification of all of the children except for A.L. Over a matter of months, hearings were held on the mother’s motion for reunification as to A.L., with the last hearing occurring in March 2018. The evidence presented at the hearing established that the mother complied with all of her case plan tasks, with the exception of an in-home parenting review, which would take place upon reunification. As to A.L.’s placement with the father in Kentucky, the evidence indicated that A.L. was doing well both emotionally and with regard to her progress at school. No evidence was presented suggesting that A.L. would be endangered if she were returned to the mother, and the attorney for the Department conceded as much during closing argument. Nonetheless, the Department argued it was in A.L.’s best interest to remain with the father.
The court entered an order denying in part and granting in part the mother’s motion for reunification as to A.L. The court found the following. The mother completed the tasks in the case plan designed to address the circumstances which resulted in the dependency proceedings. A.L. had “blossomed” since moving to Kentucky and, due to the mother’s arrest in January 2012, A.L. had not lived with the mother for more than a year. Based on the evidence and the guardian ad li-tem’s recommendation that the child re *322 main with the father, the court found that reunification with the mother would be detrimental to A.L. and thus not in her best interest. The court, however, ordered a parenting plan which provided for timesharing. The judicial review order terminated supervision and jurisdiction as to A.L.
Analysis
On appeal, the mother argues the court could not deny reunification absent a specific finding that A.L.’s safety and well-being would be endangered. She relies on section 39.522(2), Florida Statutes (2012), which, at the time of the reunification hearing, provided that a child must be reunited with the offending parent if the parent has substantially complied with the case plan to the extent the child would not be endangered by reunification.
The Department points out that section 39.522 was amended after the hearing to add a third subsection specifically addressing reunification with the offending parent when the child is in the temporary custody of the non-offending parent. The Department argues that the amended version of the statute allows a court to deny a reunification motion based solely on the best interest of the child, even where there is no evidence that reunification would endanger the child.[2]
We turn now to a discussion of each version of section 39.522, and to the issue of the retroactive application of the amended version of the statute.[3]

Application of the (“Older”) 2012 Version of Section 39.522

The relevant statute in effect at the time of the reunification hearing provided the following:
In cases where the issue before the court is whether a child should be reunited with a parent, the court shall determine whether the parent has substantially complied with the terms of the case plan to the extent that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by the return of the child to the home.
§ 39.522(2), Fla. Stat. (2012). Of important and historical note is this court’s recognition that even when applying section 39.522(2), however, the trial court must also make additional findings required under section 39.621(10), Florida Statutes (2012). See G.V. v. Dep’t of Children & Families, 985 So.2d 1243, 1246 (Fla. 4th DCA 2008). Section 39.621(10) provides the following:
The court shall base its decision concerning any motion by a parent for reunification ... on the effect of the decision on the safety, well-being, and physical and emotional health of the child. Factors that must be considered and addressed in the findings of fact of the order on the motion must include:
(a) The compliance or noncompliance of the parent with the ease plan;
(b) The circumstances which caused the child’s dependency and whether *323 those circumstances have been resolved;
(c) The stability and longevity of the child’s placement;
(d) The preferences of the child, if the child is of sufficient age and understanding to express a preference;
(e) The recommendation of the current custodian; and
(f) The recommendation of the guardian ad litem ....
§ 39.621(10), Fla. Stat. (2012). These factors have been characterized as “best interest” factors. See S.V.-R. v. Dep’t of Children & Family Servs., 77 So.3d 687, 689 (Fla. 3d DCA 2011) (holding that trial court “incorrectly applied the ‘best interest’ factors set forth in section 39.621(10)”); C.S. v. Dep’t of Children & Families, 12 So.3d 309, 310 (Fla. 4th DCA 2009) (reversing denial of reunification where trial court failed to make “specific written, factual findings as to why reunification would not be in the best interests of [the] child,” as required under section 39.621(10)).
Under the case law interpreting the pre-July 1, 2013 version of section 39.522, a trial court was required to consider the “best interest” factors enumerated in section 39.621(10). Even so, section 39.522(2) still required the trial court to grant a motion for reunification absent a finding of endangerment to the child in cases where the parent substantially complied with the case plan. See G.V., 985 So.2d at 1246-47; see also T.L. v. Dep’t of Children & Families, 98 So.3d 785, 788 (Fla. 4th DCA 2012) (vacating order of permanent guardianship where mother’s substantial compliance with case plan raised a presumption that children should be returned and trial court did not find that children would be endangered by reunification, and remanding for court to make required findings); S.V.-R., 77 So.3d at 690-91 (reversing orders denying mother’s motion for reunification and directing that child remain with father, and remanding for trial court to make required “endangerment” finding under section 39.522(2)); In re G.M., 73 So.3d 320, 322 (Fla. 2d DCA 2011) (“Without finding that reunification would be detrimental to the child, it is reversible error to permanently award custody to a nonoffending parent when the offending parent has a case plan goal of reunification and has substantially complied with the plan.” (citation omitted)); C.A. v. Dep’t of Children & Families, 27 So.3d 241, 243 (Fla. 4th DCA 2010) (reversing order of permanent guardianship and remanding for reunification where court did not make required finding of endangerment, and there was no competent substantial evidence of endangerment); G.V., 985 So.2d at 1247 (reversing order denying reunification and granting termination of supervision in a case where one child was in custody of father, based on lack of competent substantial evidence of endangerment).
Although the trial court made a finding that reunification would be “detrimental to [the child’s] well-being,” this finding was not based on any evidence of endangerment. On the contrary, the guardian ad litem testified that reunification with the mother would not endanger A.L. but that A.L. should remain in Kentucky because she had been there for nine months and was doing well there. The guardian ad litem testified that A.L. had stability with the father, and that “to uproot her now and the school year is not even over, I think would be more detrimental to her.” This statement by the guardian ad litem is not only imprecise but does not constitute competent and substantial evidence on the issue of endangerment. Further, even in its broadest sense, the guardian ad litem’s testimony does not *324 imply the child would be endangered by reunification with the mother.

Application of the (“Newer”) 2013 Version of Section 39.522

On July 1, 2013, the current version of section 89.522 became effective. This effective date was four months after the last hearing on the mother’s reunification motion, and during the pendency of the instant appeal. The amended statute contains an additional subsection specifically addressing the issue in this case:
In cases where the issue before the court is whether a child who is placed in the custody of a parent should be reunited with the other parent upon a finding of substantial compliance with the terms of the case plan, the standard shall be that the safety, well-being, and physical, mental, and emotional health of the child would not be endangered by reunification and that reunification would be in the best interest of the child.
§ 39.522(3), Fla. Stat. (2013) (emphasis added).
A plain reading of this amended version of the statute indicates that the best interest of the child is a factor which is now at least equal to the question of endangerment. That is, when considering motions for reunification where the child has been placed with the non-offending parent, a trial court may deny the motion based exclusively upon a finding that reunification would not be in the child’s best interest, without regard to a required finding of endangerment.[4]
Conclusion
We find that the amended statute, which changes the legal standard for courts to apply in ruling on reunification motions involving a child placed with the non-offending parent, is a remedial statute and does not affect substantive rights. Thus, there is no bar on its retrospective application. See Smiley v. State, 966 So.2d 330, 334 (Fla.2007) (“Remedial statutes or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.” (citation omitted)). However, because of due process considerations that arise under the particular facts of this case, and because this is a dependency case involving the best interest of the child, we vacate the challenged orders and remand for a new hearing. Given that the reunification hearing took place before the amended statute went into effect, the mother was presumably operating under the belief that *325 her motion would be granted so long as there was no evidence that reunification would endanger A.L. Indeed, the mother may have elected to present additional evidence relevant to the best interest of the child had she known that the standard had changed.
On remand, all the parties will be on notice that the amended version of the statute applies, and all parties will have the opportunity to present additional evidence.

Reversed and remanded for new hearing.

STEVENSON and KLINGENSMITH, JJ., concur.

. K.D. and J.D. have the same father; A.L. and N.L. do not have the same father as K.D. and J.D., and have different fathers from one another.

. The Department recognizes that no evidence was presented to the court below which in any way suggested that reunification would endanger A.L.

. The Department concedes that if the amended ("newer") version of section 39.522 does not apply and this court uses the law in effect at the time of the hearing, we would have to find that the trial court erred in denying the mother’s motion. However, the Department argues the amended version controls our disposition of this matter and thus, the trial court did not err by using a best interest of the child standard.

. The legislative history indicates that confusion in the case law regarding the correct standard in determining reunification motions resulted in the amendment to section 39.522, Florida Statutes. A staff analysis provides:
The bill amends s. 39.522, F.S., related to postdisposition change of custody, to clarify that, in cases in which a court is deciding whether to reunite a child, who is in the custody of one parent, with a non-custodial parent who has substantially completed a reunification plan, the standard to be applied is whether the child is endangered by placement with the non-custodial parent and whether reunification with the noncustodial parent is in the best interest of the child when compared to the existing custody arrangement. The change in legal standard should eliminate future confusion by the courts and ensure that the custody decision is in the best interest of the child. The change in legal standard is also consistent with the overall principle of chapter 39, F.S., which is the ultimate welfare of the child.
Fla. Staff Analysis, CS/HB 215 (May 13, 2013).