558 So.2d 994 (1990)
STATE of Florida, Petitioner,
v.
James WATTS, et al., Respondents.
No. 74117.
Supreme Court of Florida.
March 15, 1990.
*995 Robert A. Butterworth, Atty. Gen., and Donna A. Provonsha and Stephen A. Baker, Asst. Attys. Gen., Tampa, for petitioner.
James Marion Moorman, Public Defender, and Andrea Steffen, Asst. Public Defender, Bartow, for respondents.
BARKETT, Justice.
We have before us two cases consolidated by the Second District Court of Appeal in Watts v. State, 542 So.2d 425 (Fla. 2d DCA 1989). The issue presented is whether a 1985 amendment to the Youthful Offender Act limits the discretion of the trial court in resentencing a defendant upon violation of probation or community control. Watts certified a conflict with the Fifth District Court of Appeal's decision of Franklin v. State, 526 So.2d 159 (Fla. 5th DCA 1988), approved on other grounds, 545 So.2d 851 (Fla. 1989). Because our approval of Franklin did not directly address the issue raised in the instant case, we will do so now to clarify the law. In so doing, we approve Watts.[1]
Codefendants James Watts and Steven Smith were charged with committing an armed robbery in April 1985. Both men were convicted in separate jury trials and were adjudicated guilty. The circuit court classified Watts and Smith as youthful offenders and sentenced them to four years' incarceration to be followed by two years' community control, pursuant to chapter 958 of the Florida Statutes (1983). We have called this kind of sentence a probationary split sentence. Franklin v. State, 545 So.2d 851 (Fla. 1989); Poore v. State, 531 So.2d 161 (Fla. 1988).
After Watts and Smith were released from prison, a community control officer in 1988 alleged that they violated community control. Watts and Smith admitted the violations in open court, and the circuit court revoked community control under the authority of Brooks v. State, 478 So.2d 1052 (Fla. 1985). The defense argued that section 958.14 of the Florida Statutes (1987), part of the Youthful Offender Act, imposed a ceiling of six years' imprisonment, thereby limiting the trial court's discretion in resentencing. Section 958.14 provides:
A violation or alleged violation of probation or the terms of a community control program shall subject the youthful offender to the provisions of s. 948.06(1). However, no youthful offender shall be committed to the custody of the department *996 [of Corrections] for such violation for a period longer than 6 years or for a period longer than the maximum sentence for the offense for which he was found guilty, whichever is less, with credit for time served while incarcerated.
The state argued that section 958.14 was not intended to limit the circuit court's discretion, and that the court was free to resentence the defendants under section 948.06(1) to any sentence that the court might have originally imposed before it put the defendants on community control. The state contended that because both Watts and Smith had extensive nonscorable juvenile records, they should be resentenced to ten years' imprisonment with credit for time served, even though such sentences far exceeded the guidelines. The guidelines sentence range was three-and-one-half to four-and-one-half years for Watts, and two-and-one-half to three-and-one-half years for Smith.
For both Watts and Smith, the circuit court revoked community control, declined to continue their status as youthful offenders, and resentenced them to ten years in Florida State Prison with credit for time served, predicating the guidelines departures on the fact that both had extensive nonscorable juvenile records. That was a four-cell upward departure for Watts, and a five-cell upward departure for Smith. See Fla.R.Crim.P. 3.988(c).
Watts and Smith appealed. The Second District Court of Appeal reversed and remanded for resentencing, certifying a conflict with the Fifth District Court's decision in Franklin. The state petitioned this Court to resolve the conflict.
In our approval of Franklin, we held that upon a violation of probation during a probationary split sentence, a trial court may resentence the defendant to any term falling within the original guidelines range, including a one-cell upward increase, but that "no further increase or departure is permitted for any reason." Franklin, 545 So.2d at 853 (emphasis supplied); Lambert v. State, 545 So.2d 838, 841-42 (Fla. 1989). See Fla.R.Crim.P. 3.701(d)(14). The circuit court's imposition of sentence on Watts and Smith is a clear violation of that holding.
However, this disposition does not resolve the certified conflict, and so our analysis cannot end there. Although the district court's decision in Franklin involved primarily double jeopardy considerations, it also interpreted section 958.14 in a manner that conflicts with the instant case and with Cole v. State, 550 So.2d 1129 (Fla. 3d DCA 1989), review granted, No. 74,299 (Fla. Jan. 16, 1990); Hunnicutt v. State, 549 So.2d 1138 (Fla. 3d DCA 1989); dismissed, 554 So.2d 1169 (Fla. 1989); Kerklin v. State, 548 So.2d 689 (Fla. 2d DCA 1989); Haynes v. State, 545 So.2d 949 (Fla. 1st DCA 1989); Dixon v. State, 546 So.2d 1194 (Fla. 3d DCA 1989) (on rehearing), review granted, No. 74,608 (Fla. Dec. 26, 1989);[2]Boffo v. State, 543 So.2d 435 (Fla. 2d DCA 1989); Warren v. State, 542 So.2d 429 (Fla. 3d DCA 1989), review granted, No. 74,212 (Fla. Oct. 9, 1989); Miles v. State, 536 So.2d 262 (Fla. 3d DCA 1988), review granted, 544 So.2d 201 (Fla. 1989);[3]Hall v. State, 536 So.2d 268 (Fla. 3d DCA 1988); Reams v. State, 528 So.2d 558 (Fla. 1st DCA 1988); Buckle v. State, 528 So.2d 1285 (Fla. 2d DCA 1988); Watson v. State, 528 So.2d 101 (Fla. 1st DCA 1988); and Brown v. State, 492 So.2d 822 (Fla. 2d DCA 1986).[4] Since the only question argued *997 and addressed in Franklin was the certified question, we did not reach the district court's interpretation of section 958.14. We do so now.
Florida statutes provide the circuit court with jurisdiction to revoke the community control status of a defendant who violated community control after being sentenced as a youthful offender pursuant to chapter 958. Brooks, 478 So.2d at 1053. Although we said in Brooks that a circuit court may treat the youthful offender as though it had never placed the defendant on community control, our opinion was limited to the controlling law at the time, which was the pre-1985 version of section 958.14. That statute provided in its entirety:
A violation or alleged violation of the terms of a community control program shall subject the youthful offender to the provisions of s. 948.06(1).
§ 958.14, Fla. Stat. (1983). The controlling law changed effective July 1, 1985, when the legislature amended section 958.14 to add, in pertinent part, a second sentence:
However, no youthful offender shall be committed to the custody of the department [of Corrections] for such violation for a period longer than 6 years or for a period longer than the maximum sentence for the offense for which he was found guilty, whichever is less, with credit for time served while incarcerated.
§ 958.14, Fla. Stat. (1985). See ch. 85-288, § 24, Laws of Fla. The question is whether the legislature intended this second provision in section 958.14 to limit the application of the sentence preceding it. We believe that it did.
The intent of the legislature should be derived from the plain language of the statute in question. The plain and ordinary meaning of section 958.14 is clear. The sole function of the language added in 1985 is to restrict the sentence of youthful offenders who violate probation or community control to no more than six years' imprisonment. See Cole, 550 So.2d at 1129; Hunnicutt, 549 So.2d at 1138; Kerklin, 548 So.2d at 689; Haynes, 545 So.2d at 949; Dixon, 546 So.2d at 1194; Boffo, 543 So.2d at 435; Warren, 542 So.2d at 429; Miles, 536 So.2d at 262; Hall, 536 So.2d at 268; Reams, 528 So.2d at 558; Buckle, 528 So.2d at 1285; Watson, 528 So.2d at 101; Brown, 492 So.2d at 822. "When the language of a penal statute is clear, plain and without ambiguity, effect must be given to it accordingly," Graham v. State, 472 So.2d 464, 465 (Fla. 1985), and there is no need to resort to other tools of statutory interpretation. State v. Egan, 287 So.2d 1, 4 (Fla. 1973). Even if we did look to other tools of statutory construction, we note the basic rule that "[c]riminal statutes are to be construed strictly and in favor of the accused." State v. Jackson, 526 So.2d 58, 59 (Fla. 1988).
This interpretation is fully consistent with the policy of the Youthful Offender Act, which, we have said, was intended
to provide a "sentencing alternative," see section 958.021, Florida Statutes (1985), that is more stringent than the juvenile system and less harsh than the adult system. See A Report Submitted to the House Committee on Corrections, Probation and Parole on Senate Bill 165 (May 10, 1978). Clearly, the limitation on the time period for confinement is a primary benefit of the youthful offender alternative.
Allen v. State, 526 So.2d 69, 70 (Fla. 1988). See also Reams, 528 So.2d at 559 (Ervin, J., specially concurring).
Our conclusion is fortified by the timing of the 1985 amendment. As the district court observed in Watson, the legislature amended section 958.14 after two district court decisions questioned whether a circuit court could resentence a youthful offender as an adult upon revocation of youthful offender status and revocation of community control. See Clem v. State, 462 So.2d 1134 (Fla. 4th DCA 1984); Brooks v. State, 461 So.2d 995 (Fla. 1st DCA 1984), approved, 478 So.2d 1052 (Fla. 1985). We agree with Watson, in which the court said:
[T]he only logical conclusion is that the legislature intended to change the case law interpretation of § 958.14, or in any event to change the law, so that once the circuit court has given a defendant *998 youthful offender status and has sentenced him as a youthful offender, it must continue that status and only resentence the defendant as a youthful offender for a violation of the probation or community control portion of his youthful offender sentence. A youthful offender's sentence after revocation of probation or community control is therefore limited to a maximum of six years less credit for time served. To assume that the legislature did not intend a change in the law would be to assume it intended to enact a nullity. The language of § 958.14, as amended, relating specifically to resentencing of youthful offenders after violation of probation or community control, should prevail over the preexisting general provisions of § 948.06(1) relating to any violation of probation or community control by anyone.
Watson, 528 So.2d at 102.
Although the foregoing analysis resolves the conflict among the district courts, we must determine whether the court below properly applied the 1985 amendment of section 958.14 where the original offenses occurred prior to the effective date of the amendment, but the violations of community control occurred after the 1985 effective date. The trend in the law is clear. As the Second District Court said in Buckle, courts have viewed the 1985 amendment as being "applicable to all violations of probation occurring after its effective date because it is the violation of probation which subjects the youthful offender to the provisions of section 958.14." 528 So.2d at 1286. The district courts consistently have applied that rationale in the instant case and others. See Hamilton v. State, 553 So.2d 387, 389 (Fla. 4th DCA 1989); Cole v. State, 550 So.2d at 1129; Hunnicutt v. State, 549 So.2d at 1138; Dixon v. State, 546 So.2d at 1194; Watson v. State, 528 So.2d at 101.
However, the state argues that Watts and Smith should not benefit from the 1985 amendment, relying instead on Castle v. State, 330 So.2d 10 (Fla. 1976), and State v. Pizarro, 383 So.2d 762 (Fla. 4th DCA 1980) (on rehearing), which construed article X, section 9 of the Florida Constitution. Article X, section 9, provides:
Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed.
We find the state's reliance on these cases misplaced under these circumstances.
Castle, Pizarro, and other cases in that line construed article X, section 9 to bar criminal defendants from benefitting from changes in the statute that controlled the original prosecution and sentence. For example, in Castle, the defendant was convicted and sentenced under the arson statute, section 806.05 of the Florida Statutes (1969), which provided for a maximum penalty of ten years' imprisonment. That arson statute was amended in 1971, before Castle's trial, to reduce the maximum sentence to five years' imprisonment. Ch. 71-136, Laws of Fla. See Castle v. State, 305 So.2d 794, 796 (Fla. 4th DCA 1974), approved, 330 So.2d 10 (Fla. 1976). We held that article X, section 9, prohibited the court from reducing Castle's sentence to comport with the amendment to the substantive criminal statute. See also, e.g., Turner v. State, 87 Fla. 155, 99 So. 334 (1924) (approved life sentence for second-degree murder even though second-degree murder statute was amended before sentencing to limit the sentence to twenty-five years' imprisonment); Plummer v. State, 83 Fla. 689, 92 So. 222 (1922) (defendant cannot benefit from larceny statute amended after the crime took place). Likewise, in Pizarro, the trial court imposed its original sentence under the just-enacted Youthful Offender Act, which did not exist when Pizarro committed the underlying criminal offense, but which became effective before sentencing. The district court cited article X, section 9, and held that the trial court was precluded from imposing its original sentence under an act that did not exist when the crime occurred. Accord Bradley v. State, 385 So.2d 1122, 1123 (Fla. 1st DCA) (same), review denied, 392 So.2d 1372 (Fla. 1980). See also Sing v. State, 115 So.2d 773 (Fla. 1st DCA 1959) (invalidated original sentence imposed under a *999 statute that was not in effect when the offense was committed).
Unlike those decisions, the conduct for which Watts and Smith were found to have violated community control took place after the legislature amended the law. This is wholly distinguishable from Castle and Pizarro, where all of the criminal conduct occurred before the respective laws had changed.
Moreover, the statutes that defined the original offense and sentence in the instant case, sections 812.13, 958.10, Florida Statutes (1983), have not been amended. Here, the amendment was to a completely separate provision, section 958.14, Florida Statutes, which had no direct connection to the original conviction or sentence. Therefore, it does not fall within the proscription of article X, section 9. Our analysis finds strong support in the early case of Ex parte Pells, 28 Fla. 67, 9 So. 833 (1891). That case was this Court's first exposition of article III, section 32 of the Florida Constitution (1885), the predecessor to article X, section 9.[5]
The facts in Ex parte Pells show that on April 27, 1891, the trial court convicted Pells of aggravated assault and fined him $250 plus costs. Because he had no money, Pells defaulted on the payment that day and was jailed under the authority of Florida's aggravated assault statute ("act of 1881"). On May 25, 1891, the legislature enacted an entirely separate, general statute ("act of 1891") that limited to sixty days the maximum period of confinement for any person jailed for defaulting on the payment of fines and court costs imposed in any criminal sentence. On July 29, 1891, Pells petitioned this Court for a writ of habeas corpus, claiming that he should benefit from the latter statute. This Court agreed with Pells and issued the writ.
We explained that article III, section 32 originated after the Court decided the case of Higginbotham v. State, 19 Fla. 557 (1882). In Higginbotham, the Court invalidated a conviction of assault with intent to murder because the assault statute was repealed after the crime was committed but before the prosecution took place, and there was no savings clause in the statute to allow the then-pending prosecution to proceed. Under those circumstances, we reasoned, "no further proceedings can, after the repealing law takes effect, be taken under the law so repealed." Ex parte Pells, 28 Fla. at 73, 9 So. at 834. We then inferred that the people of Florida approved article III, section 32, in 1885 to provide a constitutional savings clause, thereby negating the effect of the Higginbotham holding. See also Sigsbee v. State, 43 Fla. 524, 529, 30 So. 816, 817 (1901).
Applying that rationale, the Court in Ex parte Pells found that article III, section 32, did not prevent Pells from benefitting from the change in the statutory scheme. We reasoned that the change of law had no direct bearing on the statute that defined the crime, nor did it directly affect the statute that determined the original sentence to which Pells was exposed.
We do not discover, nor is there, in the act of May 25th, 1891, anything which purports to repeal or amend the act of 1881. Any offense committed under the act of 1881, prior to the approval of the latter act, or even subsequent to it, can be prosecuted and punished in the same manner as it could be, had the act of [1891] never been enacted. The offenses defined or created by the former act, and the punishment demanded against any of them by it, are in no wise changed or affected by the act of 1891, and a court would look in vain to the later act to find in it anything changing either the nature of the offenses created, or even the character or degree of the punishment authorized *1000 by the act of 1881. In so far as the act of 1881 authorizes the prosecution or punishment of any person, it is not affected by the act of [1891]; the same punishment may be inflicted, and the same form of sentence is to be entered as before the approval of the later act.
Ex parte Pells, 28 Fla. at 74, 9 So. at 834-35.
The facts in the instant case are analogous. The amendment to section 958.14 in no wise amended or directly affected sections 812.13 and 958.10, under which Watts and Smith were originally convicted and punished. Just as we reasoned in Ex parte Pells, an offense committed prior to or subsequent to the 1985 amendment "can be prosecuted and punished in the same manner as it could be had the" 1985 amendment "never been enacted." Id. Neither the definition of those offenses nor the original punishment authorized by statute were in any "wise changed or affected" by the 1985 amendment, "and a court would look in vain to the" 1985 amendment "to find in it anything changing either the nature of the offense created, or even the character or degree of the punishment authorized by the" statutes under which Watts and James originally were convicted and punished. Id.
Therefore, we conclude that the district court properly interpreted section 958.14 to apply to violations of probation or community control that occurred after the effective date of the 1985 amendment, even where the original offenses occurred prior to that date.
For the aforementioned reasons, we approve the decision of the court below, and disapprove that portion of the district court's opinion in Franklin that is inconsistent with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] We decide today State v. Dixon, 558 So.2d 1001 (Fla. 1990).
[3] We decide today State v. Miles, 558 So.2d 1001 (Fla. 1990).
[4] But see Hamilton v. State, 553 So.2d 387, 389 (Fla. 4th DCA 1989), in which the Fourth District appeared to align itself with the Fifth District's decision of Franklin v. State, 526 So.2d 159 (Fla. 5th DCA 1988), approved on other grounds, 545 So.2d 851 (Fla. 1989). The court in Hamilton noted the sharp conflict among the districts and certified the following question:

By its holding in Franklin v. State, 545 So.2d 851 (Fla. 1989), did the [C]ourt intend to hold that a trial court could resentence a youthful offender as an adult, upon a violation of community control, despite the 1985 amendment to the youthful offender act, section 958.14, Florida Statutes?
Hamilton, 553 So.2d at 389. See also James v. State, 543 So.2d 236 (Fla. 4th DCA 1989) (on rehearing), review granted, No. 74,405 (Fla. Oct. 23, 1989). We decide today James v. State, 558 So.2d 1000 (Fla. 1990).
[5] Article III, section 32 of the Florida Constitution (1885), provided:

The repeal or amendment of any Criminal Statute shall not effect the prosecution or punishment of any crime committed before such repeal or amendment.
Courts have interpreted this section the same as its successor provision in the 1968 revision. See, e.g., Castle v. State, 305 So.2d 794, 797 (Fla. 4th DCA 1974), approved, 330 So.2d 10 (Fla. 1976). Accord 26A Fla. Stat. Ann. 515 (West 1970) (commentary by Talbot "Sandy" D'Alemberte).