# Supreme Court of Florida

_____

No. SC18-747
_____

**TASHARA LOVE,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

December 19, 2019

CANADY, C.J.

The certified conflict issue in this case is whether section 776.032(4),

Florida Statutes (2017), which effective in June 2017 altered the burden of proof at

pretrial immunity hearings under Florida's "Stand Your Ground" law, applies to

pending cases involving criminal conduct alleged to have been committed prior to

the effective date of the statute. In the decision below and the certified conflict

case, the district courts framed this issue as presenting a "retroactivity" question

that itself turns on whether section 776.032(4) is procedural or substantive.

This Court has for review *Love v. State*, 247 So. 3d 609, 613 (Fla. 3d DCA

2018), in which the Third District Court of Appeal concluded that section

776.032(4) was "a substantive change in the law, and therefore does not apply retroactively." The Third District also concluded that article X, section 9 of the Florida Constitution precluded the statute from being applied retroactively. *Id.*[1] According to the Third District, this lack of retroactivity meant that section 776.032(4) was inapplicable in the case, even though the defendant's immunity hearing took place after the statute went into effect. *Id.* at 610, 612. In the certified conflict case of *Martin v. State*, 43 Fla. L. Weekly D1016, D1018, 2018 WL 2074171, at *4 (Fla. 2d DCA May 4, 2018), the Second District Court of Appeal concluded that section 776.032(4) "is procedural in nature and, therefore, retroactive in application; that, as such, it applies to pending cases, including those on appeal." The Second District also concluded that article X, section 9 did not bar retroactive application of the statute. *Id.* at D1017 n.5. According to the Second District, this retroactivity meant that the defendant who had already been convicted prior to the statute's effective date was "entitled to a new immunity hearing under the amended procedure of the statute." *Id.* at D1018; *see id.* at D1016. This Court

_____

1. At the time, article X, section 9 provided: "Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed." Article X, section 9 was subsequently amended in November 2018 and now reads: "Repeal of a criminal statute shall not affect prosecution for any crime committed before such repeal." These changes went into effect on January 8, 2019. *See* art. XI, § 5(e), Fla. Const. Whether these changes are themselves retroactive is not before this Court. We look only to the pre-2019 language.

granted discretionary review of *Love* and has jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

We agree with *Martin* that section 776.032(4) is a procedural change in the law and is not categorically barred by article X, section 9 from applying in pending cases. Accordingly, we quash *Love*. However, we disagree with *Martin*'s all-or-none conclusion that the new procedures apply in all pending cases, even where the immunity hearing was held prior to the statute's effective date. The determination of whether a new procedure applies in a pending case generally depends on the posture of the case. Here, the relevant event is the immunity hearing, and section 776.032(4) applies to those immunity hearings taking place on or after the statute's effective date. Because there is no indication the Legislature intended the statute to undo pre-effective-date immunity hearings, we disapprove *Martin*'s decision to order a new immunity hearing in that case.

We begin by briefly reviewing the Stand Your Ground law and the statutory amendment at issue. We next present the facts and procedural history of *Love* and discuss *Martin*. We then explain our decision in this case, including our conclusion that applying section 776.032(4) in a pending case does not entail a retroactive application of the statute.

# I. SECTION 776.032(4)

Under the Stand Your Ground law, a person is generally "immune from criminal prosecution and civil action" when that person justifiably uses or threatens to use force under certain circumstances. § 776.032(1), Fla. Stat. (2017); *see* ch. 2005-27, Laws of Fla. The criminal immunity "includes arresting, detaining in custody, and charging or prosecuting the defendant." § 776.032(1), Fla. Stat. In *Dennis v. State*, 51 So. 3d 456, 464 (Fla. 2010), this Court held that a motion to dismiss asserting immunity under section 776.032 "should be treated as a motion filed pursuant to [Florida Rule of Criminal Procedure] 3.190(b)" and that the trial court should conduct a pretrial evidentiary hearing and "decide the factual question of the applicability of the statutory immunity." But *Dennis* did not reach the issue of burden of proof. That issue was later decided in *Bretherick v. State*, 170 So. 3d 766 (Fla. 2015). *Bretherick* concluded that at a pretrial immunity hearing "the defendant bears the burden of proof, by a preponderance of the evidence, to demonstrate entitlement to Stand Your Ground immunity." *Id.* at 768. The dissent in *Bretherick* argued that the burden should be the same as when a Stand Your Ground defense is presented at trial, because "the essential nature of the [underlying] factual question" is the same in both settings. *Id.* at 779 (Canady, J., dissenting). In other words, the burden should be on the State to "establish[]

beyond a reasonable doubt that the defendant's conduct was not justified under the governing statutory standard." *Id.*

Section 776.032(4) was the Legislature's eventual response to *Bretherick*. The 2017 amendment to section 776.032 provides:

> (4) In a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1).

§ 776.032(4), Fla. Stat. (2017); *see* ch. 2017-72, § 1, Laws of Fla. The Legislature thus largely adopted the *Bretherick* dissent but with a "clear and convincing" burden on the State as opposed to the more exacting trial burden of "beyond a reasonable doubt." In adopting this framework, the Legislature provided that the legislation "shall take effect upon becoming a law." Ch. 2017-72, § 2, Laws of Fla.

## II. BACKGROUND

Petitioner, Tashara Love, seeks review of the Third District's decision denying her petition for writ of prohibition after the trial court denied her motion for immunity. The relevant facts are as follows:

> On November 26, 2015, Love and a group of women were involved in an altercation, which lasted approximately three minutes, outside a Miami-Dade County nightclub. At the end of the altercation, Love shot the victim, Thomas Lane, as he was about to hit her daughter. Love does not dispute these facts.

Thereafter, the State charged Love with one count of attempted second degree murder with a firearm. Love invoked Florida's Stand Your Ground law, section 776.032, Florida Statute[s] (2017), asserting she was immune from prosecution because she committed the crime while defending her daughter.

*Love*, 247 So. 3d at 610. Love argued to the trial court that the newly enacted amendment in section 776.032(4) should apply to her immunity hearing. The State countered that section 776.032(4) did not have retroactive application and that even if it did, applying it to pending cases would violate article X, section 9. The State argued in the alternative that the statute violated the separation of powers doctrine.

**The Trial Court's Order**

After an evidentiary hearing, the trial court sought to determine whether "the Amendment should apply to all pending cases or . . . only to cases where the conduct at issue occurred after the effective date." The trial court cited *Landgraf v. USI Film Products*, 511 U.S. 244, 255-64 (1994), and *Metropolitan Dade County v. Chase Federal Housing Corp.*, 737 So. 2d 494 (Fla. 1999), for the proposition that the first step in a retroactivity analysis is to determine whether there is a clear expression of legislative intent regarding retroactivity. The trial court examined the 2017 amendment and found no such expression of intent.

The trial court next looked to "whether the statute is procedural/remedial or substantive." Recognizing that "burden of proof standards are normally considered

procedural," the trial court cited *Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 424 (Fla. 1994), for the proposition that "[t]he presumption applied to procedural and remedial statutes is that they are to apply to pending cases." The trial court then rejected the State's reliance on *Smiley v. State*, 966 So. 2d 330 (Fla. 2007). There, this Court concluded that a statute "establish[ing] a 'no duty to retreat' rule in a broad context that had not previously existed" was "a substantive change in the statutory law" and could not be applied retroactively to pending cases. *Id.* at 335-37. In doing so, *Smiley* noted among other things that a statute is deemed substantive if it "achieves a 'remedial purpose by creating substantive new rights or imposing new legal burdens.' " *Id.* at 334 (quoting *Arrow Air*, 645 So. 2d at 424). Here, the trial court determined that section 776.032(4) "create[d] no substantive rights" and that terms such as "new legal burdens" had to be "strictly limited to the creation or destruction of substantive or vested rights."

The trial court also declined to read too broadly the language of article X, section 9 barring retroactivity of statutory amendments that "affect prosecution or punishment." The trial court explained that this Court has long "held that legislative enactments that affect the procedure of a criminal case do not run afoul of the [constitutional] prohibition so long as they do not address themselves to the essence of the offense itself, i.e., the definition of the crime, or the nature of the

punishment." The trial court concluded that section 776.032(4) "merely changed the procedure for *how* a defendant enforces his right to statutory immunity."

After concluding that section 776.032(4) was procedural and that article X, section 9 did not apply, the trial court concluded that the statute nevertheless violated the separation of powers, namely this Court's rulemaking authority under article V, section 2(a). In other words, "*Bretherick* . . . survives the Amendment."

The trial court then explained why Love "has not carried her burden" under *Bretherick*. Noting in part that Love's affidavit was "contradicted by an objective review of the [security camera] video in numerous material respects," the trial court concluded that "[n]othing that [the victim] did that evening could leave a reasonable person in fear that [Love's daughter] would lose her life or suffer great bodily harm." After effectively concluding that the video evidence prevented Love from meeting a reasonable person standard,[2] the trial court—in seemingly irreconcilable fashion—opined that had section 776.032(4) applied, Love would be entitled to immunity. The trial court noted it "cannot say, without hesitancy, that the State proved that Tashara Love was not responding to a reasonable belief that

---

2. Section 776.012(2), Florida Statutes (2019), provides in part: "A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony."

- 8 -

her daughter was about to suffer great bodily harm." But *Bretherick* controlled—according to the trial court's reasoning—and Love therefore was not entitled to immunity. Love then petitioned the Third District for a writ of prohibition.

**The Third District's Decision**

In denying Love's petition, the Third District first rejected the trial court's conclusion that section 776.032(4) was unconstitutional. The Third District concluded that the Legislature acted within its "constitutional authority to enact procedural provisions in statutes that are intertwined with substantive rights," in this case the substantive right to immunity. *Love*, 247 So. 3d at 611.[3]

The Third District next disagreed with the trial court's conclusion that the 2017 amendment was procedural. The Third District determined that *Smiley* "mandates a finding that [section 776.032(4)] is a substantive change in the law." *Id.* at 611 n.3. The Third District reasoned that the statute "imposed a new legal burden on the State, requiring the State to prove by clear and convincing evidence that the defendant was not justified in using or threatening to use force." *Id.* at 612-13. And according to the Third District, because section 776.032(4) is substantive, it "therefore does not apply retroactively." *Id.* at 613.

---

3. We have been presented with no challenge to the Third District's ruling regarding the constitutionality of section 776.032(4). We thus do not address this issue.

Lastly, again looking to *Smiley*, the Third District explained its view that article X, section 9 also prevented the statute from being applied to Love's case:

> In the case before us, section 776.032(4) qualifies as a criminal statute because it affects whether the State can prosecute a defendant in the same manner as before subsection (4) was added. If the amended statute were to apply to Love, she could not be prosecuted in the same manner as before because the burden of proof at the immunity hearing would now shift to the State and the burden would rise to clear and convincing evidence.

*Id.* Recognizing that its decision conflicted with *Martin*, in which the Second District concluded that section 776.032(4) was a procedural change that should be applied retroactively, the Third District certified conflict with *Martin*, while opining that *Martin* was inconsistent with *Smiley*. *Id.* at 611 n.3.

### *Martin*—the Certified Conflict Case

In *Martin*, the defendant, Martin, was charged with felony battery. *Martin*, 43 Fla. L. Weekly at D1016. The trial court denied Martin's immunity motion, and Martin was tried, convicted, and sentenced. *Id.* While Martin's appeal was pending, section 776.032(4) went into effect, and Martin argued that he was "entitled to a new immunity hearing." *Id.* The Second District agreed, concluding that the statute was "procedural in nature and, therefore, retroactive in application; that, as such, it applies to pending cases, including those on appeal." *Id.* at D1018.

- 10 -

After setting forth "some basic postulates about the application of statutory amendments"—including that procedural amendments "may apply retroactively to pending proceedings"—the Second District summed up this Court's caselaw:

> Broadly speaking, substantive law is that which "prescribes duties and rights," while "procedural law concerns the means and methods to apply and enforce those duties and rights." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1358 (Fla. 1994). Amendments are procedural in nature if they "do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing." *Smiley v. State*, 966 So. 2d 330, 334 (Fla. 2007) (quoting *City of Lakeland v. Catinella*, 129 So. 2d 133, 136 (Fla. 1961)). In the context of criminal cases specifically, "substantive law is that which declares what acts are crimes and prescribes the punishment therefor, while procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished." *State v. Garcia*, 229 So. 2d 236, 238 (Fla. 1969).

*Id.* at D1017. The Second District then noted that "statutory changes to the burden of proof—the change at issue here—are invariably deemed procedural in nature for purposes of retroactive application." *Id.* And the Second District concluded that section 776.032(4) was no exception to that general rule and thus "can be applied retrospectively" because it altered "[n]either the substantive rights of a successful claim of immunity nor the necessary elements of proof to establish a claim of immunity." *Id.*

## III. ANALYSIS

The certified conflict issue is whether section 776.032(4), Florida Statutes (2017), applies to cases that were pending at the time the statute went into effect.

- 11 -

This issue presents a pure question of law that this Court reviews de novo. *See Bionetics Corp. v. Kenniasty*, 69 So. 3d 943, 947 (Fla. 2011) (applying a de novo standard to "[t]he question of whether a statute applies retroactively or prospectively").

At the outset, we recognize that sometimes "[t]he distinction between substantive and procedural law is neither simple nor certain." *Caple v. Tuttle's Design-Build, Inc.*, 753 So. 2d 49, 53 (Fla. 2000). We also recognize that some of this Court's general pronouncements regarding the retroactivity of procedural law have been less than precise. Indeed, we acknowledge having been unclear about what it means to give retroactive application to procedural law. But properly understood, the caselaw compels the conclusions that section 776.032(4) is procedural, applies to all immunity hearings on or after the statute's effective date, and does not implicate article X, section 9.

To explain our decision, we first briefly examine *Smiley*, on which the Third District in *Love* largely relied in concluding that section 776.032(4) is substantive and thus not retroactive. We then explain why *Smiley* does not control and why section 776.032(4) is procedural. We then clarify some of this Court's previous pronouncements regarding the retroactivity of procedural law and explain why the Second District in *Martin* erred in concluding that section 776.032(4) applied in all pending cases, including cases in which the Stand Your Ground immunity hearing

- 12 -

was conducted prior to the effective date of that provision.  Lastly, we explain why article X, section 9 is inapplicable.

### *Smiley*

*Smiley* addressed whether section 776.013, Florida Statutes (2005), which was enacted in 2005 as part of the original Stand Your Ground legislation, was retroactively "applicable to cases pending at the time of its enactment."  *Smiley*, 966 So. 2d at 333.  More specifically, *Smiley* addressed whether a defendant whose "conduct . . . allegedly occurred prior to the . . . effective date of" the statute, *id.* at 337, was entitled to certain jury instructions based upon the new law, *id.* at 332. *Smiley* concluded that the statute could not be applied retroactively.  *Id.* at 336-37.

*Smiley* first examined "whether the statute constitutes a procedural/remedial change or a substantive change in the law," the latter of which would carry a "presumption against retroactive application."  *Id.* at 334.  *Smiley* described the former as statutes "which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing." *Id.* (quoting *City of Lakeland v. Catinella*, 129 So. 2d 133, 136 (Fla. 1961)). *Smiley* concluded that the statute was "clearly" substantive "because it alters the circumstances in which it is considered a criminal act to use deadly force without first needing to retreat"—i.e., it "*created* a new affirmative defense."  *Id.* at 335.

- 13 -

*Smiley* next explained that the substantive statute's "presumption of prospective application" could only be overcome if "there is clear evidence of *legislative intent* to apply the statute [retroactively]," and then only if "retroactive application is *constitutionally permissible*." *Id.* at 336 (alteration in original) (quoting *Metropolitan Dade*, 737 So. 2d at 499). *Smiley* looked to article X, section 9's "restriction on retroactive application of criminal legislation" and concluded that the new statute could not be applied retroactively:

> The key determination is that section 776.013 qualifies as a "criminal statute." With regard to article X, section 9, the term "criminal statute" is defined in a broad context. In *Washington v. Dowling*, 92 Fla. 601, 109 So. 588 (1926), this Court provided the following definition for the words "criminal statute": "[A]n act of the Legislature as an organized body relating to crime or its punishment . . . defining crime, treating of its nature, or providing for its punishment . . . [or] deal[ing] in any way with crime or its punishment." *Id.*, 109 So. at 591. In the instant matter, section 776.013 qualifies as a "criminal statute," because it has a direct impact on the prosecution of the offense of "murder" in Florida. *Cf. State v. Watts*, 558 So. 2d 994, 999-1000 (Fla. 1990) (holding that article X, section 9 did not prevent retroactive application of the legislation, because the parties could still "be prosecuted and punished in the same manner") (quoting *Ex parte Pells*, 28 Fla. 67, 9 So. 833, 834-35 (1891)). Unlike the defendant in *Watts*, Smiley could not be prosecuted in the same manner because retroactive application of section 776.013 would provide him with a new affirmative defense to the first-degree murder charge (i.e., he had no duty to retreat before he used deadly force in self-defense in his taxi).

*Id.* at 336-37 (alterations in original).

**Procedural vs. Substantive**

*Smiley* noted that a statute is deemed substantive if it "achieves a 'remedial purpose by creating substantive new rights or imposing new legal burdens.' " *Id.* at 334 (quoting *Arrow Air*, 645 So. 2d at 424). The Third District here largely relied on this language, reasoning that under section 776.032(4) the State has the new burden of disproving an immunity claim by clear and convincing evidence. *See Love*, 247 So. 3d at 612-13. The State advances the same reasoning and also cites the following language from *Arrow Air*: "The presumption against retroactive application of a law that affects substantive rights, liabilities, or duties is a well established rule of statutory construction." *Arrow Air*, 645 So. 2d at 425. The State argues that section 776.032(4) "work[s] a significant transformation of the immunity defense." We conclude that the trial court here and the Second District in *Martin* correctly concluded that section 776.032(4)—a statute that imposes a new procedural "burden"—is procedural rather than substantive.

In *State v. Garcia*, 229 So. 2d 236, 238 (Fla. 1969), this Court, as in *Smiley*, set out the general difference between procedural law and substantive law. *Garcia* then distinguished the two concepts in the specific context of "criminal law and procedure," explaining:

> As related to criminal law and procedure, substantive law is that which declares what acts are crimes and prescribes the punishment therefor, while procedural law is that which provides or regulates the

- 15 -

steps by which one who violates a criminal statute is punished.  *See State v. Augustine*, 197 Kan. 207, 416 P.2d 281 (1966).

*Id.*  Under *Garcia*, section 776.032(4) is clearly procedural law.  Section 776.032(4) neither "declares what acts are crimes" nor "prescribes the punishment therefor."  *Id.*  Section 776.032(4) does not alter the elements of self-defense, justifiable force, or any crime, nor does it alter the punishment for any crime.  Instead, it alters the law "which provides or regulates the steps by which," *id.*, immunity determinations are made.  The statute changed the "procedure . . . for deciding claims of immunity."  *Dennis*, 51 So. 3d at 459.  The conclusion that section 776.032(4) is procedural is wholly consistent with *Smiley*'s determination that the statute there was substantive.  *Smiley* also looked to *Garcia*, but the statute in *Smiley* "alter[ed] the circumstances in which it is considered a criminal act to use deadly force without first needing to retreat."  *Smiley*, 966 So. 2d at 335.  That statute thus "declare[d] what acts are crimes."  *Garcia*, 229 So. 2d at 238.

This Court's civil cases do not support a conclusion that section 776.032(4) is substantive.  Unlike section 776.032(4), the statutes at issue in those cases generally created a new substantive right or interfered with vested rights.  *See, e.g.*, *Caple*, 753 So. 2d at 54 (deeming substantive a statute that "create[d] the right" for a commercial mortgagee in a foreclosure action to petition for a certain remedy before entry of a final judgment); *Arrow Air*, 645 So. 2d at 423-25 (concluding that new "Whistle-Blower's Act" could not retroactively "impose liability for a

- 16 -

termination that occurred prior to its effective date" absent "clear evidence of legislative intent," because the law "creat[ed] a new cause of action"—i.e., a new "substantive right" and "new liability"); *Young v. Altenhaus*, 472 So. 2d 1152, 1153-54 (Fla. 1985) (concluding that a new statute "which authorizes the trial court to award a reasonable attorney's fee to the prevailing party in a malpractice action" was substantive and could not be applied retroactively "to causes of action that accrued prior to that statute's effective date" in part because the statute "constitutes 'a new obligation or duty' " that interfered with "rights" that "vested prior to the effective date" (quoting *McCord v. Smith*, 43 So. 2d 704, 709 (Fla. 1949)); *Walker & LaBerge, Inc. v. Halligan*, 344 So. 2d 239, 240, 243 (Fla. 1977) (concluding that a defendant could rely on a statutory immunity from suit that was in effect at the time of the allegedly negligent conduct but that was later withdrawn, because the statutory changes worked a "modification of fundamental substantive rights" that had "vested" and could not "be retroactively withdrawn").

Here, the Legislature did not withdraw or interfere with any vested right. Nor did the Legislature create any new substantive right. The "substantive right to assert immunity" was established in 2005. *Dennis*, 51 So. 3d at 462. Section 776.032(4) merely altered "the method of conducting litigation involving" that right. *Caple*, 753 So. 2d at 54 (quoting *Haven Federal Savings & Loan Ass'n v. Kirian*, 579 So. 2d 730, 732 (Fla. 1991)). Although section 776.032(4) imposed a

- 17 -

new procedural "obligation" on the State, it did not—unlike in *Altenhaus*—substantively impose any new obligation or duty with respect to any underlying conduct. Indeed, it imposed on the State a lesser burden than the State otherwise already has at trial with respect to the same "factual question." *Bretherick*, 170 So. 3d at 779 (Canady, J., dissenting).

Two additional factors support the conclusion that section 776.032(4) is procedural. First, this Court has recognized in other contexts that the burden of proof is a procedural matter. *E.g.*, *Shaps v. Provident Life & Acc. Ins. Co.*, 826 So. 2d 250, 254-55 (Fla. 2002) (concluding that "in Florida the burden of proof is a procedural issue for conflict-of-laws purposes," and explaining why the burden of proof is "generally" better viewed as "a procedural issue"); *Walker & LaBerge*, 344 So. 2d at 243 (declining to retroactively apply certain substantive amendments, and distinguishing a case that involved the "inherently procedural" matter of the burden of proof). Second, this Court has repeatedly referred to Stand Your Ground immunity determinations as procedural matters, including in the context of the burden of proof. *See, e.g.*, *Kumar v. Patel*, 227 So. 3d 557, 559 (Fla. 2017) ("The Legislature, however, did not suggest procedural mechanisms for invoking and determining Stand Your Ground immunity.");[4] *Bretherick*, 170 So. 3d at 775

---

4. *Kumar* addressed the pre-2017 version of the Stand Your Ground law.

- 18 -

(noting that certain other states had "adopted a procedure in which the defendant bears the burden of proof, by a preponderance of the evidence at a pretrial evidentiary hearing, in the context of their analogous immunity laws"); *Dennis*, 51 So. 3d at 459 ("The trial court recognized that no procedure had yet been enacted for deciding claims of immunity under section 776.032(1).").

## Retroactivity

We recognize that this Court's previous pronouncements have not been entirely consistent regarding the retroactivity of procedural statutes. *Compare Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1358 (Fla. 1994) ("Procedural or remedial statutes . . . are to be applied retrospectively and are to be applied to pending cases."), *with Lee v. State*, 174 So. 589, 591 (Fla. 1937) ("[T]hose [statutes] affecting procedure . . . may in some cases be given a retrospective operation . . . .").[5] Indeed, some of those pronouncements arguably support the Second District's retroactivity approach in *Martin*. But properly understood, whether a new procedural statute applies in a pending case will generally turn on the posture of the case, not the date of the events giving rise to the case. And if the new procedure does apply, that is not in and of itself a

---

5. Courts generally use the terms "retrospectively" and "retroactively" interchangeably. *E.g.*, *McCord*, 43 So. 2d at 707.

- 19 -

retrospective operation of the statute. This conclusion finds support in the Supreme Court's decision in *Landgraf*, as well as this Court's caselaw.

*Landgraf* generally explained the concept of a retrospective statute: "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . . Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269-70. This Court has echoed on multiple occasions *Landgraf*'s notion of a retrospective law. *E.g.*, *Metropolitan Dade*, 737 So. 2d at 499; *Arrow Air*, 645 So. 2d at 424-25.

Here, although section 776.032(4) may make it more difficult—as a practical matter—for the State to proceed to trial, the statute in no way "attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 270. Therefore, even if applied in a pending case, section 776.032(4) is not truly a retrospective statute. *See Smiley*, 966 So. 2d at 334 ("[S]tatutes relating to remedies or modes of *procedure* . . . do not come within the legal conception of a retrospective law . . . ." (quoting *Catinella*, 129 So. 2d at 136)). As *Landgraf* noted, procedural matters generally—but not always—do not "rais[e] concerns about retroactivity":

> Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity. For example, in *Ex parte Collett*, 337 U.S. 55, 71 (1949), we held that 28 US.C. § 1404(a) governed the transfer of an

action instituted prior to that statute's enactment. We noted the diminished reliance interests in matters of procedure. 337 U.S., at 71. Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.

*Landgraf*, 511 U.S. at 275 (footnote omitted); *see also id.* at 275 n.29 (stopping short of "suggest[ing] that concerns about retroactivity have no application to procedural rules"). But that does not mean that a new procedure applies in all pending cases. Rather, the "commonsense" application of a new procedure generally "depends on the posture of the particular case":

> Of course, the mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, *and the promulgation of a new rule of evidence would not require an appellate remand for a new trial*. Our orders approving amendments to federal procedural rules reflect the commonsense notion that the applicability of such provisions ordinarily depends on the posture of the particular case.

*Id.* at 275 n.29 (emphasis added).

We conclude that section 776.032(4) was intended to and does apply in this "commonsense" and "ordinar[y]" manner. *Id.* That is, the statute applies to those immunity hearings, including in pending cases, that take place on or after the statute's effective date. This application of section 776.032(4)—essentially, giving the statute prospective application—finds support in decisions from this Court.

- 21 -

For example, in *Lee*, 174 So. at 589-90, this Court dismissed as untimely an appeal brought outside the period established by a statute that went into effect after the date of the alleged crime but before judgment of conviction was entered. Noting that the issue presented "a question of procedure" and that "statutes . . . affecting procedure . . . may in some cases be given a retrospective operation," this Court determined that the new statute was "plainly intended to have a prospective operation only." *Id.* at 590-91. But "prospective operation" meant that the new statutory time limit "applie[d] to writs of error to judgments rendered after the statute became effective," and thus the statute applied in the pending case. *Id.* at 591. More recently, *Pearlstein v. King*, 610 So. 2d 445, 445-46 (Fla. 1992), concluded that a new rule of civil procedure imposing a "120-day time limit for serving a defendant after filing an initial pleading . . . applie[d] to complaints filed prior to . . . the effective date of the rule" but that the 120-day period began from the rule's effective date. After noting that "[r]ules of procedure are prospective unless specifically provided otherwise," this Court explained that its decision was a "prospective application" of the new rule and "not a true retroactive application," the latter of which would have required service "within 120 days of filing [the] complaint." *Id.* at 446.

In the certified conflict case, *Martin* correctly concluded that section 776.032(4) is procedural but then seemingly gave the statute "a true retroactive

application," *id.*, by ordering a new immunity hearing for a defendant convicted prior to the statute's effective date.  The caselaw does not support such a default application of a procedural statute.  And the legislation itself is devoid of any suggestion that the Legislature intended section 776.032(4) to undo pre-effective-date immunity hearings.  *See Orme v. State*, 25 So. 3d 536, 547 (Fla. 2009) ("[U]nder the rules of statutory construction, there must be a clear expression of intended retrospective application."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 261 (2012) ("As a general, almost invariable rule, a legislature makes law for the future, not for the past. . . .  Statutes, by contrast [to judicial opinions], typically pronounce what the law becomes when the statutes take effect.  This point is basic to our rule of law.").

Indeed, the legislation on its face is plainly forward-looking.  Section 776.032(4) provides that the procedures apply "once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing."  And the chapter law creating section 776.032(4) provides that the "act shall take effect upon becoming a law."  Ch. 2017-72, § 2, Laws of Fla.  Although this Court has rejected "the unbending principle that the inclusion of an effective date in a statute will always supersede the clearly expressed legislative intent that the statute be applied retroactively," *Metropolitan Dade*, 737 So. 2d at 502, here there is no such "expressed legislative intent."

**Article X, Section 9**

Article X, section 9 does not prevent section 776.032(4) from applying in pending cases to immunity hearings that take place on or after the statute's effective date. Although article X, section 9 uses the term "criminal statute," the caselaw reflects that the application of the provision largely turns on whether the statute at issue is substantive or procedural. *E.g.*, *Lee*, 174 So. at 590 (rejecting the notion that the predecessor to article X, section 9 prevented the application in a pending case of a new statute "dealing with a question of procedure"). *Smiley* itself noted that the constitutional provision "imposes a restriction on retroactive application of criminal legislation." *Smiley*, 966 So. 2d at 336. And as explained above, the mere application of a new procedural statute—like section 776.032(4)— in a pending case is not a retroactive application. Article X, section 9 is not applicable here. But because *Smiley* contains arguably broad language, we review the relevant caselaw.

*Smiley* quoted *Washington v. Dowling*, 109 So. 588 (Fla. 1926), for the proposition that "the term 'criminal statute' is defined in a broad context." *Smiley*, 966 So. 2d at 337. *Dowling* defined the term to include statutes that "deal in any way with crime or its punishment." *Dowling*, 109 So. at 591. Section 776.032(4) on some level can be said to "deal . . . with crime." *Id.* But that is true of course for just about any statute in the many chapters of the Florida Statutes addressing

"crimes." *Smiley* itself—despite quoting *Dowling*—clearly based its conclusion regarding article X, section 9 on more specific reasoning, namely that the statute at issue provided "a new affirmative defense" and thus the defendant could no longer "be prosecuted in the same manner." *Smiley*, 966 So. 2d at 337. That reasoning is consistent with this Court's other caselaw, which reveals that the constitutional provision addresses statutes that go to the essence of the underlying crime or the character or degree of punishment. Section 776.032(4) impacts neither. We thus disagree with the Third District that Love "could not be prosecuted in the same manner as before." *Love*, 247 So. 3d at 613.

In *State v. Watts*, 558 So. 2d 994, 995-96, 998 (Fla. 1990), this Court addressed whether article X, section 9 precluded application of a Youthful Offender Act amendment that limited the maximum punishment that could be imposed upon a defendant who had been sentenced as a youthful offender and who subsequently violated community control. The amendment went into effect after the original offense but before the community-control violation. *Id.* at 998. *Watts* determined that the amendment applied, reasoning in part that the amendment did not impact "the statutes that defined the original offense and sentence" and "had no direct connection to the original conviction or sentence." *Id.* at 999. *Watts* looked to *Ex parte Pells*, 9 So. 833 (Fla. 1891), in which this Court interpreted "the predecessor to article X, section 9." *Watts*, 558 So. 2d at 999. *Pells* concluded that

- 25 -

the constitutional provision did not prevent the defendant from benefitting from a new law that in no way "changed or affected" the statutes under which the defendant was prosecuted and punished. *Pells*, 9 So. at 834. *Pells* explained that the defendant could "be prosecuted and punished in the same manner," *id.*, and that nothing "chang[ed] either the nature of the offense created, or even the character or degree of the punishment authorized," *id.* at 834-35.

Two years after *Pells*, this Court in *Mathis v. State*, 12 So. 681, 683, 687 (Fla. 1893), concluded that the constitutional provision did not prevent the application at trial of a new statute that reduced a capital defendant's peremptory challenges from twenty to ten. Noting that the constitutional provision was "designed . . . to guard against the liberation of offenders without trial by the repeal of statutes under which offenses may have been committed," *Mathis* explained that the provision did not apply to "the *remedy or procedure* which the legislature may enact for the prosecution and punishment of offenses, unless the change in the remedy should affect in some way the substantial rights of defense." *Id.* at 687 (emphasis added). Rather, the provision "relates to the offense itself, or the punishment thereof." *Id.* And "the right to peremptory challenges appertains to the remedy, the procedure under which prosecutions are conducted." *Id.* Here, nothing about section 776.032(4) alters "the essence of" any crime, affirmative defense, or punishment. *Id.*

*Dowling*, decided after *Mathis*, has no application here. There, after the defendant was sentenced to death by hanging, a statutory amendment abolished "death by hanging as a means of punishment," and "death by electricity [was] substituted therefor." *Dowling*, 109 So. at 588-89. *Dowling* concluded that the amendment did "not affect . . . prosecution" but that it did "affect the punishment prescribed by law," *id.* at 591, and could not be applied to the defendant, *id.* at 592-93. In other words, the defendant was to die by hanging. *Dowling* thus turned on the term "punishment," not "prosecution." Moreover, *Dowling* had a jurisdictional underpinning. *See id.* at 592 ("Such sentence is now final, the power of the court over the subject-matter is at an end, and there exists no means by which the court can regain control of the cause.").

This case has nothing to do with finality, and section 776.032(4) does not "affect . . . punishment." *Id.* at 591. As *Mathis* explained, the constitutional provision generally does not encompass "remedy or procedure . . . for the prosecution and punishment of offenses" but rather relates "to the essence of the offense itself." *Mathis*, 12 So. at 687. And as *Lee* reiterated post-*Dowling*: "We are dealing with a question of procedure . . . ." *Lee*, 174 So. at 590. Section 776.032(4) presents a question of procedure.

## IV. CONCLUSION

Section 776.032(4) is a procedural change in the law and applies to all Stand Your Ground immunity hearings conducted on or after the statute's effective date. In *Love*, the pretrial hearing took place after the effective date of section 776.032(4) and should have been conducted under the new standard. Accordingly, we quash *Love* and remand for further proceedings consistent with this opinion. In the certified conflict case of *Martin*, the pretrial hearing was properly conducted under *Bretherick*. We thus disapprove *Martin*'s decision to order a new hearing.

It is so ordered.

POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Statutory Validity/Certified Direct Conflict of Decisions

    Third District - Case No. 3D17-2112

    (Miami-Dade County)

Carlos J. Martinez, Public Defender, and Maria E. Lauredo, Chief Assistant Public Defender, and Jeffrey Paul DeSousa, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida,

    for Petitioner

Ashley Moody, Attorney General, and Amit Agarwal, Solicitor General, Edward Wenger, Chief Deputy Solicitor General, and Christopher Baum, Deputy Solicitor General, Office of the Attorney General, Tallahassee, Florida,

for Respondent

Jason Gonzalez of Shutts & Bowen LLP, Tallahassee, Florida; and Stephen P. Halbrook of Shutts & Bowen LLP, Fairfax, Virginia,

for Amici Curiae Unified Sportsmen of Florida, Inc.

David H. Thompson and Davis Cooper of Cooper & Kirk, PLLC, Washington, District of Columbia,

for Amicus Curiae National Rifle Association Freedom Action Foundation

Glen P. Gifford, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida; and Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, Florida,

for Amici Curiae Florida Public Defender Association, Inc. and Florida Association of Criminal Defense Lawyers

Penny H. Brill of Theodore F. Brill, P.A., Plantation, Florida,

for Amicus Curiae League of Prosecutors – Florida

Glenn Burhans, Jr., and Kelly A. O'Keefe of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Tallahassee, Florida,

for Amicus Curiae Giffords Law Center to Prevent Gun Violence

Darren A. LaVerne, Daniel M. Ketani, and Timur Tusiray of Kramer Levin Naftalis & Frankel, LLP, New York, New York; and Sean R. Santini of Santini Law, Miami, Florida,

for Amici Curiae for Everytown for Gun Safety and Brady Center to Prevent Gun Violence

Ricardo J. Bascuas, Coral Gables, Florida,

for Amicus Curiae University of Miami School of Law – Federal Appellate Clinic